# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRUCE HASKIN,**<br>**ADEMIR BEGIC,**<br>**ADIS TOKIC,**<br>**ADNAN HRUSTEMOVIC,**<br>**ADNAN OMERDIC,**<br>**ALBION AJETI,**<br>**ALEN OSMIC,**<br>**ALEXANDER JOHN MARKS,**<br>**ALIS HAMUSTAFIC,**<br>**ALMIR BRKOVIC,**<br>**ALMIR HUSIC,**<br>**ALMIR MEHIC,**<br>**AMAR SINGH,**<br>**AMIR DULIC,**<br>**AMIR KURTIC,**<br>**AMIR TABUKCIC,**<br>**ANDRAE RASHAUN PATRICK,**<br>**ANDRE PITTER,**<br>**ANTHONY BRANCH,**<br>**ANTHONY HINGLETON,**<br>**ARBEN NUREDINI,**<br>**ASMIR OMIC,**<br>**BELMIR HADZIRIBIC,**<br>**BENJAMIN HAMUSTAFIC,**<br>**BORCHE NIKOLOVSKI,**<br>**BORIS BILANDZIJA,**<br>**BRANDON RASHAD BROWN,**<br>**BRIAN GEORGE SHIRLEY,**<br>**BRIAN PATRICK JIMMERSON,**<br>**CAREY EARL JOHNSON JR.,**<br>**CHARLES TAYLOR,**<br>**CHARLIE HALL, III,**<br>**CHAUNCEY MARSHALL DAVID**<br>**WILLIAMS,**<br>**CLAUS KEYS,**<br>**CLIFTON JEMEL WAITERS,**<br>**COREY HUGULEY,**<br>**DAMIR OMERBEGOVIC,**<br>**DAMITA PALMER,**<br>**DANIEL KEITH SINGLETARY,**<br>**DANIEL STANOJKOVSKI,**<br>**DANIJEL MRKONJIC,** | **COMPLAINT**<br><br><br>**Civil Action No. 1:25-cv-4247** |

i

**DARIN DAVIS SR.,**
**DARMIN CEJVAN,**
**DARREN WILLIAMS,**
**DEJAN MRKONJIC,**
**DEJAN POPOVIC,**
**DHARMINDER BANGA,**
**DINO AHMETOVIC,**
**DINO PASALIC,**
**DOROTHY LEWIS,**
**DZERALDINA ZIGIC,**
**EDIB MUHOVIC,**
**EDIN KASUMOVIC,**
**EDIN SALIHOVIC,**
**EDIS BAJREKTAREVIC,**
**ELIJUWON BRANDT HALE,**
**ELVANA BREGU,**
**ELVEDIN TRAKIC,**
**ELVIRA OKIC,**
**EMIR KAMARIC,**
**EMIR SALKOVIC,**
**ERAKA RUSSELL,**
**FERNANDO COLAZO LOPEZ,**
**FIKRET BASIC,**
**FLAMUR DUGOLLI,**
**FROSINA STEFANOVSKA,**
**FUAD HANKIC,**
**GEORGE ZHORZHIKASHVILI,**
**GIORGI MAMALADZE,**
**GORAN LIGIC,**
**GREGGORY MONTRA ALEXANDER,**
**HARIS LELIC,**
**HASRET RESIDOVIC,**
**HUGH VALENTINE COLLINS,**
**IGOR CURCIC,**
**ISAAC HOUSTON,**
**IVANA KRSEVSKA DODEVSKA,**
**IVORY LAMAR HOPE,**
**JADRANKO PIRIC,**
**JAMES BATSON III,**
**JAMIE BARR,**
**JAMMAR SENTELL SINGLETON,**
**JASMIN OKIC,**
**JASMIN PIRIC,**
**JASMINKA BEKIC,**
**JELENA TODOROVIKJ,**
**JEREMY STEELE,**

**JONATHAN LASSITER,**
**JOSE R. FIGUEROA,**
**JOSHUA AARON ROBINSON,**
**JOSHUA BERNARD HICKS,**
**JOSIP MARINOVIC,**
**JUAN JONES,**
**JUNIOR CABA,**
**LABARON ANDRAKE HICKS,**
**LAITH NESHWATI,**
**LAMONT WHITE ,**
**LARISA DEKIC,**
**LELA MISHIKJ,**
**LELAND LUJAN,**
**LYNDELL MARTIN,**
**MAGDALENA LIPKOVSKA,**
**MAHIR ALIC,**
**MAIDA IKANOVIC,**
**MARCUS KUYKENDALL,**
**MARK ANTHONY DAVIS,**
**MARK WAWERU MWANIKI,**
**MARVIN RANDY ARMSTRONG,**
**MATTHEW DODD,**
**MERIMA HODZIC,**
**MICHAEL STONE,**
**MIKI PETKOVSKI,**
**MIRA KOMAZEC-SEHIC,**
**MIRALEM CIPURKOVIC,**
**MIRALEM DENJAGIC,**
**MIRANDA HETEMI,**
**MIRNESA IBRIC,**
**MIRSADA TOMIC,**
**MIRZA TUBIC,**
**MORRIS ANTHONY GAVINS,**
**MOSES WELHAM BOLO,**
**MUHAREM LATIFOVIC,**
**MURIS MAGLIC,**
**NEDIM OMAZIC,**
**NEDIM POZEGIC,**
**NEDZAD SMAJIC,**
**NICOLAS CANDELARIO,**
**NICOLE STEELE,**
**NINA SCOTT,**
**NINA ZUNIC,**
**NORRIS R MOODY JR.,**
**OSMAN CIVIC,**
**OSMAN DEDIC,**

**PATRICK SIMON,**
**PIERRE LIONEL CHARLES,**
**PREDRAG SIBINOVIKJ,**
**ROBERT DAVIS,**
**ROCKIE SMITH, II  ,**
**ROGER CASSIDY JR.,**
**SALIH BEGU,**
**SAMIL HODZIC,**
**SAMMY CABEZA-REYES,**
**SANDEEP SINGH,**
**SANELA AJNADZIC,**
**SANJA ADJIKJ,**
**SATNAM SINGH,**
**SEFIK GOLOS,**
**SELIM REXHEPI,**
**SELMA HUSOVIC,**
**SENAD BEKIC,**
**SEYMOUR G. REID,**
**SHALVA MAZIASHVILI,**
**SHKLJKJIM SULEJMANI,**
**SIMON NJAU THINI,**
**STEFAN JANKOVSKI,**
**STEVEN ALLEN PEPPERNICK,**
**STEVEN ANDREW PRZYBYLOWICZ,**
**SUZETTE MCLEAN,**
**TAIFA SAM LWANGU,**
**TIMOTHY BERNARD JENNINGS,**
**TONIA BARTON,**
**TORIAN DENARD MOODY,**
**TROY QUINTON CYPRIAN,**
**TYSON TREB'OR YANCEY,**
**VALBON MUHAXHERI,**
**VAN PATRICK TORAIN,**
**VESNA GEORGIEVSKA,**
**VINOD KUMAR,**
**WESLEY NGENO,**
**WILLIAM COLEMAN,**
**WILLIAM G. DANIEL, and**
**ZHARKO GJORGJIJEVSKI,**

      **Plaintiffs,**
**v.**

**THE ISLAMIC REPUBLIC OF IRAN,**

      **Defendant.**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

JURISDICTION AND VENUE ............................................................................................... 1

THE DEFENDANT .................................................................................................................. 2

STATEMENT OF FACTS ....................................................................................................... 3

I.  THE TALIBAN IS PART OF AN INSURGENT TERRORIST SYNDICATE THAT
    AIMS TO KILL AMERICANS AND THEIR ALLIES IN AFGHANISTAN ................... 3

    A. Background: The Soviet-Afghan War ......................................................................... 3
    B. The Formation of al-Qaeda ......................................................................................... 7
    C. The Taliban and the War in Afghanistan ................................................................... 11

II. IRAN PROVIDED MATERIAL SUPPORT TO AL-QAEDA AND THE TALIBAN FOR
    THE PURPOSE OF ATTACKING COALITION FORCES ........................................... 17

    A. Iran Supplied the Taliban with Weapons, Lethal Substances, and Explosives ............. 27
    B. Iran Provided The Taliban With Lodging, Training, Expert Advice or Assistance,
       Safehouses, Personnel, and Transportation ................................................................. 32
    C. Iran Provided Financial Support to the Taliban ......................................................... 35
    D. Iran Provided Material Support to al-Qaeda. ............................................................. 37

III. IRAN-SPONSORED TERRORIST ORGANIZATIONS CARRIED OUT NUMEROUS
     TERRORIST ATTACKS WHICH INJURED PLAINTIFFS ......................................... 41

    A. February 27, 2007 Attempted Assassination of Dick Cheney ....................................... 41
    B. March 15, 2010 Rocket Attack on Bagram Airfield ...................................................... 42
    C. May 19, 2010 Assault on Bagram Airfield .................................................................... 42
    D. October 29, 2011 Bombing of an Armored Car ........................................................... 43
    E. June 1, 2012 Assault on Forward Operating Base Salerno ........................................... 43
    F. August 7, 2012 Assault on Forward Operating Base Shank ........................................... 44
    G. September 14, 2012 Assault on Camp Bastion .............................................................. 45
    H. August 28, 2013 Assault in Ghazni ............................................................................. 45
    I. December 8, 2014 Rocket Attack on Bagram Airfield .................................................. 46
    J. December 8, 2015 Siege of Kandahar Airfield .............................................................. 46
    K. November 12, 2016 Bagram Airfield Bombing ............................................................. 47
    L. May 8, 2019 Attack on Counterpart International ......................................................... 47
    M. December 11, 2019 Bagram Airfield Bombing ............................................................. 48

PLAINTIFFS .......................................................................................................................... 49

v

Bruce Haskin ........................................................................................... 49
Ademir Begic .......................................................................................... 49
Adis Tokic .............................................................................................. 50
Adnan Hrustemovic ................................................................................ 50
Adnan Omerdic ...................................................................................... 50
Albion Ajeti ........................................................................................... 51
Alen Osmic ............................................................................................ 51
Alexander John Marks ........................................................................... 51
Alis Hamustafic ..................................................................................... 52
Almir Brkovic ........................................................................................ 52
Almir Husic ........................................................................................... 52
Almir Mehic .......................................................................................... 53
Amar Singh ............................................................................................ 53
Amir Dulic ............................................................................................. 53
Amir Kurtic ........................................................................................... 54
Amir Tabukcic ....................................................................................... 54
Andrae Rashaun Patrick ........................................................................ 54
Andre Pitter ........................................................................................... 55
Anthony Branch ..................................................................................... 55
Anthony Hingleton ................................................................................ 55
Arben Nuredini ...................................................................................... 56
Asmir Omic ........................................................................................... 56
Belmir Hadziribic ................................................................................. 56
Benjamin Hamustafic ............................................................................ 57
Borche Nikolovski ................................................................................. 57
Boris Bilandzija ..................................................................................... 57
Brandon Rashad Brown ......................................................................... 58
Brian George Shirley ............................................................................. 58
Brian Patrick Jimmerson ....................................................................... 58
Carey Earl Johnson Jr. ........................................................................... 59
Charles Taylor ....................................................................................... 59
Charlie Hall, III ..................................................................................... 60
Chauncey Marshall David Williams ...................................................... 60
Claus Keys ............................................................................................. 60
Clifton Jemel Waiters ............................................................................ 61
Corey Huguley ....................................................................................... 61
Damir Omerbegovic ............................................................................... 61
Damita Palmer ....................................................................................... 62
Daniel Keith Singletary ......................................................................... 62
Daniel Stanojkovski ............................................................................... 62
Danijel Mrkonjic ................................................................................... 63
Darin Davis Sr. ...................................................................................... 63
Darmin Cejvan ....................................................................................... 64
Darren Williams ..................................................................................... 64
Dejan Mrkonjic ...................................................................................... 64
Dejan Popovic ........................................................................................ 65

Dharminder Banga ........................................................................................ 65
Dino Ahmetovic ........................................................................................... 65
Dino Pasalic ................................................................................................. 66
Dorothy Lewis .............................................................................................. 66
Dzeraldina Zigic ........................................................................................... 66
Edib Muhovic ............................................................................................... 67
Edin Kasumovic ............................................................................................ 67
Edin Salihovic .............................................................................................. 68
Edis Bajrektarevic ........................................................................................ 68
Elijuwon Brandt Hale .................................................................................... 68
Elvana Bregu ............................................................................................... 69
Elvedin Trakic .............................................................................................. 69
Elvira Okic ................................................................................................... 69
Emir Kamaric ............................................................................................... 70
Emir Salkovic ............................................................................................... 70
Eraka Russell ............................................................................................... 70
Fernando Colazo Lopez ................................................................................. 71
Fikret Basic ................................................................................................. 71
Flamur Dugolli .............................................................................................. 71
Frosina Stefanovska ..................................................................................... 72
Fuad Hankic ................................................................................................. 72
George Zhorzhikashvili .................................................................................. 73
Giorgi Mamaladze ........................................................................................ 73
Goran Ligic .................................................................................................. 73
Greggory Montra Alexander ........................................................................... 74
Haris Lelic ................................................................................................... 74
Hasret Residovic .......................................................................................... 74
Hugh Valentine Collins .................................................................................. 75
Igor Curcic .................................................................................................. 75
Isaac Houston .............................................................................................. 75
Ivana Krsevska Dodevska ............................................................................. 76
Ivory Lamar Hope ......................................................................................... 76
Jadranko Piric .............................................................................................. 76
James Batson III ........................................................................................... 77
Jamie Barr ................................................................................................... 77
Jammar Sentell Singleton .............................................................................. 77
Jasmin Okic ................................................................................................. 78
Jasmin Piric ................................................................................................. 78
Jasminka Bekic ............................................................................................ 78
Jelena Todorovikj ......................................................................................... 79
Jeremy Steele .............................................................................................. 79
Jonathan Lassiter ......................................................................................... 79
Jose R. Figueroa ........................................................................................... 80
Joshua Aaron Robinson ................................................................................. 80
Joshua Bernard Hicks .................................................................................... 80
Josip Marinovic ............................................................................................ 81

Juan Jones ................................................................................................................. 81
Junior Caba ............................................................................................................... 81
LaBaron Andrake Hicks ............................................................................................ 82
Laith Neshwati .......................................................................................................... 82
Lamont White ........................................................................................................... 82
Larisa Dekic .............................................................................................................. 83
Lela Mishikj .............................................................................................................. 83
Leland Lujan .............................................................................................................. 83
Lyndell Martin ........................................................................................................... 84
Magdalena Lipkovska ................................................................................................ 84
Mahir Alic ................................................................................................................. 85
Maida Ikanovic .......................................................................................................... 85
Marcus Kuykendall .................................................................................................... 85
Mark Anthony Davis .................................................................................................. 86
Mark Waweru Mwaniki ............................................................................................. 86
Marvin Randy Armstrong ........................................................................................... 86
Matthew Dodd ........................................................................................................... 87
Merima Hodzic .......................................................................................................... 87
Michael Stone ............................................................................................................ 87
Miki Petkovski ........................................................................................................... 88
Mira Komazec-Sehic ................................................................................................. 88
Miralem Cipurkovic ................................................................................................... 88
Miralem Denjagic ...................................................................................................... 89
Miranda Hetemi ......................................................................................................... 89
Mirnesa Ibric ............................................................................................................. 89
Mirsada Tomic ........................................................................................................... 90
Mirza Tubic ............................................................................................................... 90
Morris Anthony Gavins .............................................................................................. 90
Moses Welham Bolo ................................................................................................... 91
Muharem Latifovic ..................................................................................................... 91
Muris Maglic ............................................................................................................. 91
Nedim Omazic ........................................................................................................... 92
Nedim Pozegic ........................................................................................................... 92
Nedzad Smajic ........................................................................................................... 92
Nicolas Candelario ..................................................................................................... 93
Nicole Steele ............................................................................................................. 93
Nina Scott .................................................................................................................. 93
Nina Zunic ................................................................................................................. 94
Norris R Moody Jr. .................................................................................................... 94
Osman Civic ............................................................................................................... 94
Osman Dedic .............................................................................................................. 95
Patrick Simon ............................................................................................................ 95
Pierre Lionel Charles ................................................................................................. 95
Predrag Sibinovikj ..................................................................................................... 96
Robert Davis .............................................................................................................. 96
Rockie Smith, II ......................................................................................................... 97

Roger Cassidy Jr. ........................................................................................................ 97
Salih Begu ................................................................................................................... 97
Samil Hodzic ............................................................................................................... 98
Sammy Cabeza-Reyes .................................................................................................. 98
Sandeep Singh .............................................................................................................. 98
Sanela Ajnadzic ........................................................................................................... 99
Sanja Adjikj ................................................................................................................. 99
Satnam Singh ............................................................................................................... 99
Sefik Golos .................................................................................................................. 100
Selim Rexhepi .............................................................................................................. 100
Selma Husovic .............................................................................................................. 100
Senad Bekic .................................................................................................................. 101
Seymour G. Reid........................................................................................................... 101
Shalva Maziashvili ....................................................................................................... 102
Shkljkjim Sulejmani ..................................................................................................... 102
Simon Njau Thini.......................................................................................................... 102
Stefan Jankovski ........................................................................................................... 103
Steven Allen Peppernick ............................................................................................... 103
Steven Andrew Przybylowicz ....................................................................................... 103
Suzette Mclean ............................................................................................................. 104
Taifa Sam Lwangu ........................................................................................................ 104
Timothy Bernard Jennings ............................................................................................ 104
Tonia Barton ................................................................................................................. 105
Torian Denard Moody ................................................................................................... 105
Troy Quinton Cyprian ................................................................................................... 105
Tyson Treb'or Yancey ................................................................................................... 106
Valbon Muhaxheri ........................................................................................................ 106
Van Patrick Torain ........................................................................................................ 106
Vesna Georgievska ....................................................................................................... 107
Wesley Ngeno ............................................................................................................... 107
William Coleman ........................................................................................................... 107
William G. Daniel ......................................................................................................... 108
Vinod Kumar ................................................................................................................. 108
Zharko Gjorgjijevski ..................................................................................................... 108

CLAIMS FOR RELIEF ................................................................................................... 109

COUNT ONE: DAMAGES UNDER 28 U.S.C. § 1605A .................................................. 109

PRAYER FOR RELIEF .................................................................................................. 111

**INTRODUCTION**

1.      For decades, the Islamic Republic of Iran ("Iran," "Defendant") has sponsored and provided material support to terrorist organizations such as the Taliban and al-Qaeda in order to advance their own foreign policy goals and undermine those of the United States of America. These organizations, with Iran's sponsorship and endorsement, carried out numerous terrorist attacks in the Islamic Republic of Afghanistan ("Afghanistan") between 2006 and 2020, including those which injured Plaintiffs in this case (the "Terrorist Attacks," or "Attacks").

2.      Plaintiffs in this case include U.S. nationals, members of the U.S. armed forces, and non-U.S. nationals who were "employee[s] of the government of the United States" or "individual[s] performing a contract awarded by the United States Government acting within the scope of the employee's employment" at the time of these Attacks.

3.      Plaintiffs, through undersigned counsel, respectfully file this lawsuit for damages under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A and related statutes.

**JURISDICTION AND VENUE**

4.      Jurisdiction in this Court arises pursuant to 28 U.S.C. §§ 1330-1332, 1367, and 1605A, as well as 18 U.S.C. §§ 2333 and 2334.

5.      Personal jurisdiction over the Defendant will be established once the Defendant is properly served pursuant to 28 U.S.C. § 1608.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

7.      28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state designated as a State Sponsor of Terrorism for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material

support and resources for such acts. The foreign state is liable for the acts of its officials, employees, and agents.

## THE DEFENDANT

8.      Defendant the Islamic Republic of Iran ("Iran") is a foreign state within the meaning of 28 U.S.C. §1391(f) and 1603(a). Iran has been designated as a foreign state that sponsors terrorism within the meaning of 28 U.S.C. §1605A and the Export Administrations Act of 1979, 50 U.S.C. § 4605(j), and the Foreign Assistance Act of 1961, 22 U.S.C. §2371, since January 19, 1984, and is still so designated today.[1]

9.      Through its officials, employees, and agents acting within the scope of their relationship to Iran, Iran has provided material support and resources for the commission of acts of terrorism within the meaning of 28 U.S.C. § 1605A. In 2007, the U.S. State Department described Iran as "the most active state sponsor of terrorism" in the world and "a threat to regional stability and U.S. interests in the Middle East because of its continued support for violent groups."[2]

10.     Iran's agents include the terrorist organization Hezbollah, the Islamic Revolutionary Guard Corps ("IRGC"), and the IRGC's Qods Force ("IRGC-QF"), among others. Many of Iran's agents are designated Foreign Terrorist Organizations ("FTOs") under section 219 of the Immigration and Nationality Act, Specially Designated Global Terrorists ("SDGTs") under 31 C.F.R. § 594.31 or both. As a designated State Sponsor of Terrorism which routinely

---

[1]   Press Release, U.S. State Dep't, *Fact Sheet: Designation of the Islamic Revolutionary Guard Corps.*, (April 8, 2019).
[2]   U.S. State Dep't, *Country Reports on Terrorism 2007* at 172 (Apr. 2008).

employs FTOs as instruments of its agenda, Iran is liable to Plaintiffs for the injuries it caused by supporting terrorist attacks in Afghanistan.

## STATEMENT OF FACTS

11.    In order to injure Americans and their allies abroad, and in order to advance Iran's foreign policy objectives, Defendant provided material support in the form of funds, training, and access to various terrorist organizations who engaged in violent attacks against Americans and American facilities in Afghanistan.

12.    These terrorist organizations, including al-Qaeda, the Taliban, the Haqqani Network, and others, collectively functioned as a "syndicate" as they carried out terrorist attacks on Americans and American facilities.

13.    Iran directed, planned, authorized, and provided material support and resources to al-Qaeda and the Taliban for the purpose of carrying out terrorist attacks including the Attacks which injured Plaintiffs. Therefore, Iran's actions proximately and directly caused the injuries to Plaintiffs.

## I.    THE TALIBAN IS PART OF AN INSURGENT TERRORIST SYNDICATE THAT AIMS TO KILL AMERICANS AND THEIR ALLIES IN AFGHANISTAN

### A.    Background: The Soviet-Afghan War

14.    The histories of al-Qaeda and the Taliban are inextricably linked to the history of Afghanistan and predecessor militias in Afghanistan. Of primary significance are the terrorist organization the Haqqani Network ("HQN") and its founder Jalaluddin Haqqani ("Jalaluddin").

15.    The HQN was formed in 1973. The HQN is an Afghan and Pakistani insurgent group whose senior leadership structure is hierarchical and mostly familial in nature. Major familial leaders include the founder Jalaluddin Haqqani and his brother Khalil Haqqani, as well as Jalaluddin's sons Badruddin, Nasiruddin and Sirajuddin.

16.     Jalaluddin was born in 1939 in the village of Karezgay in the Zadran District of Paktia Province, Afghanistan. He was an ethnic Pashtun from the Zadran tribe of Khost. Jalaluddin attended the prestigious Islamic seminary (called a 'madrassa') Darul Uloom Haqqania at Akora Khattak, in Pakistan from 1964-1973, attaining certification as a Mawlawi (Islamic scholar). The Haqqania is a Deobandi madrassa which combined religious studies with urging students ("talibs") to conduct violent jihad against perceived enemies of Islam. The majority of the leadership of the Taliban and of the HQN are graduates of this institution.

17.     Jalaluddin adopted the radical religious teachings and curriculum of Haqqania, which combined encouragement of violent jihad with extremist, anti-colonial Deobandi religious teachings in establishing over 80 madrassas in the Pakistani tribal areas in the 1970s-1980s. These madrassas were intended to serve as, and in fact became, mass recruiting stations of mujahideen ("holy warriors") to conduct jihad under the leadership of the HQN, al-Qaeda, and later the Taliban.

18.     Immediately following the July 17, 1973, coup led by the Prime Minister General Sardar Mohammed Daoud Khan, Jalaluddin declared a violent jihad, with the goal of ridding Afghanistan of the "progressive" (secular) influences under the new autocratic regime and restoring traditional Islamic law and culture. Unlike other Afghan jihadi groups at the time, the Haqqanis built a network of tribal support, because they were the only group based upon Islam and jihadi Islamic teaching instead of based upon trial association. This was the initial formation of the HQN.

19.     HQN's identity and endurance are intimately tied to the geographically central terrain from which it emerged and in which it has always been based. Since the mid-1970s the HQN has increasingly wielded a tremendous amount of operational and diplomatic influence

over the Southeastern Afghan provinces of Khost, Paktia and Paktika (together known as Loya Paktia) and Pakistan's North Waziristan. This mountainous region, which straddles the Durand Line, has long been a center for political resistance against Afghan regimes. Since the early 1980s HQN has also had a presence in, and operational ties to, Kabul, Ghazni, Logar and Wardak.

20.     After the 1979 Soviet invasion of Afghanistan which initiated the Soviet-Afghan War, Jalaluddin emerged as a prominent commander in the mujahideen resistance movement opposed to the Afghanistan government and Soviet forces. The HQN received a steady supply of weapons provided by the CIA, China and Saudi Arabia and delivered by the Pakistani military intelligence agency Inter-Services Intelligence ("ISI").

21.     During the insurgency against Soviet forces and the Afghan communist government, HQN was the only Afghan jihadi group to actively recruit and welcome into their rank foreign fighter volunteers. This innovation transformed the nature of the jihad in Afghanistan, linking it to broader struggles and giving birth to what would become known as the global jihad.

22.     In 1980, Jalaluddin called for Muslims worldwide to come to Afghanistan and join the jihad. Many of those who heeded Jamaluddin's call would later play leading roles in al-Qaeda and the Taliban.

23.     As a result of HQN's strategic decision regarding foreign fighters, Osama bin Laden ("bin Laden"), a Saudi, and his supporters went on to establish al-Qaeda and build training facilities and command infrastructure in territory controlled by HQN.

24.     In 1984, Palestinian Islamic scholar Abdallah Yusuf Azzam ("Azzam"), together with bin Laden, Wa'el Hamza Julaidan, and al-Zawahiri, formed Maktab Khadamāt al-

5

Mujāhidīn al-'Arab; the "Afghan Services Bureau," (hereinafter "MAK") in Peshwar, Pakistan, to raise funds and recruit foreign mujahideen to support the jihad against the Soviets in Afghanistan.

25.    ISI provided funding, training, weapons and safe harbor for HQN and in exchange, HQN supplied mujahideen for ISI led terrorist attacks across the disputed border with India in the Kashmir providence.

26.    Documents taken from HQN compounds in early 2002 provide evidence that the network historically relied on the ISI for cash, weapons, training and virtually all supplies during the early 1990s. Former Joint Chiefs of Staff Chairman Admiral Mike Mullen testified before the U.S. Senate that the HQN acts as a "veritable arm" of the ISI.[3]

27.    According to a report published by the Combatting Terrorism Center at West Point, "the threat to U.S. national interests that emerged most fully on 9/11 stemmed from both Al-Qaeda and the Haqqani Network." [4]

28.    On September 19, 2012, United States designated HQN as a Foreign Terrorist Organization consistent with section 219 of the Immigration and Nationality Act. It is still so designated.[5]

29.    Throughout its history, the HQN has operated on and influenced militancy on the local, regional and global levels, the most underappreciated dimension of which is the global

---

[3]    Vahid Brown and Don Rassler, *Fountainhead of Jihad – The Haqqani Nexus* 1, (2013) quoting Hearing before the Senate Armed Services Committee, September 2011.
[4]    The Haqanni Network and the Evolution of Al-Qaeda, Report of the Combatting Terrorism Center at West Point, Don Rassler and Vahid Brown. https://ctc.westpoint.edu/wp-content/uploads/2011/07/CTC-Haqqani-Report_Rassler-Brown-Final_Web.pdf
[5]    U.S. State Dep't, *Foreign Terrorist Organizations*, (accessed April 16, 2025) https://www.state.gov/foreign-terrorist-organizations/ ("List of Designated Foreign Terrorist Organizations").

character of the HQN and the central role it has played in the evolution of al-Qaeda, the Taliban, and the global jihadi movement. The HQN has been more important to the development and sustainment of al-Qaeda and the global jihad than any other single actor or group.

## B. The Formation of al-Qaeda

30.     Azzam wanted MAK to continue to focus on obtaining funding to support the Afghani jihad, building medical facilities in Pakistan, near the border, to treat mujahidin injured in the fighting, and recruit Arab Muslims to come to Peshawar for religious training and indoctrination into jihadi Islam. bin Laden wanted to recruit foreigners, especially Arabs, to actively participate in armed conflict, whereas Azzam wanted to concentrate on providing funding and supplies for the jihad and spreading his fatwa across the Muslim world to create a pure Islamic state, one of the pillars would be militant jihad.

31.     In October 1986, bin Laden (with support from the bin Laden Construction company in Saudi Arabia) built a fortified training area on the front line against the Soviets, near the village of Jaji in Northern Paktia (in territory controlled and protected by HQN). He named the camp Ma'sadat al-Ansar (the Lion's Den of Supporters) (also called "al-Masada"), though it quickly became known as "al-qaeda al-akkariyya" (the military base), from which the name of bin Laden's organization "al-Qaeda" (literally, "the base") derived from.

32.     Recruits arriving in Pakistan would first be sent for training at HQN training camps for indoctrination, basic training, and vetting. Vetted recruits would be sent to bin Laden's camp, where they received advanced training before setting out to fight the Soviets as part of a completely autonomous group. In April 1987, the al-Masada fighters achieved fame and glory throughout Afghanistan and the Arab world thanks to what came to be known as the Jaji battle, during which the fighters in this compound managed to hold out against Soviet forces for three weeks before repelling the attack.

7

33.     The Islamist militant organization al-Qaeda was formed in Pakistan in 1988 by veterans of the Soviet-Afghan war, including bin Laden and Ayman al-Zawahiri ("al-Zawahiri") among others.

34.     On April 14, 1988, the Geneva Accords were signed, ending the Soviet-Afghan War; but the HQN persisted, along with the struggle between the mujahideen and the existing Afghan government, then the Republic of Afghanistan. This conflict became known as the Afghan Civil War.

35.     From 1989 until about 1991, al-Qaeda was headquartered in Afghanistan and in Peshawar, Pakistan. In or about 1991, the leadership of al-Qaeda, including bin Laden, relocated to Sudan. Al-Qaeda was headquartered in Sudan from approximately 1991 until approximately 1996. In 1996, Bin Laden and other members of al-Qaeda relocated to Afghanistan under the protection of the Taliban and the HQN.

36.     Bin Laden and al-Qaeda violently opposed the United States for several reasons. First, the United States was regarded as an "infidel" because it was not governed in a manner consistent with the group's extremist interpretation of Islam. Second, the United States was viewed as providing essential support for other "infidel" governments and institutions, particularly the governments of Saudi Arabia and Egypt, the nation of Israel, and the United Nations organization, which were regarded as enemies of the group. Third, al-Qaeda opposed the involvement of the United States armed forces in the Gulf War in 1991 and in Operation Restore Hope in Somalia in 1992 and 1993. In particular, al-Qaeda opposed the continued presence of American military forces in Saudi Arabia (and elsewhere on the Saudi Arabian Peninsula) following the Gulf War. Fourth, al-Qaeda opposed the United States Government because of the arrest, conviction and imprisonment of persons belonging to al-Qaeda or its affiliated terrorist

groups or those with whom it worked. For these and other reasons, bin Laden declared "jihad," or holy war, against the United States, which he had carried out through al-Qaeda and its affiliated organizations.

37.     al-Qaeda functioned both on its own and through some of the terrorist organizations that operated under its umbrella, including: Egyptian Islamic Jihad, which was led by al- Zawahiri, and at times, the Islamic Group (also known as "el Gamaa Islamia" or simply "Gamaa't"), and a number of Salafi-jihadi groups in other countries, including the Sudan, Egypt, Saudi Arabia, Yemen, Somalia, Eritrea, Djibouti, Afghanistan, Pakistan, Bosnia, Croatia, Albania, Algeria, Tunisia, Lebanon, the Philippines, Tajikistan, Azerbaijan, and the Kashmiri region of India and the Chechnyan region of Russia. al-Qaeda also maintained cells and personnel in a number of countries to facilitate its activities, including in Kenya, Tanzania, the United Kingdom, Germany, Canada, Malaysia, and the United States.

38.     Bin Laden and al-Qaeda also forged alliances with administrators of Iran and its associated terrorist group, Hezbollah, for the purpose of waging jihad together against their perceived common enemy in the West, the United States.

39.     Since at least 1989, bin Laden and the terrorist group al-Qaeda sponsored, operated, managed, and/or financed training camps in Afghanistan. Those camps were used to instruct members and associates of a-Qaeda and its affiliated terrorist groups in the use of firearms, explosives, chemical weapons, and other weapons of mass destruction. In addition to providing training in the use of various weapons, these camps were used to conduct operational planning against United States targets around the world and experiments in the use of chemical and biological weapons. These camps were also used to train others in security, surveillance and intelligence operations and counterintelligence methods, such as the use of codes and passwords,

and to teach members and associates of al-Qaeda about traveling to perform operations. For example, al-Qaeda instructed its members and associates to dress in "Western" attire and to use other methods to avoid detection by security officials. The group also taught its members and associates to monitor media reports of its operations to determine the effectiveness of their terrorist activities.

40.     Since approximately 1992, bin Laden and al-Qaeda maintained relationships with Iran (including the Ministry of Intelligence of the Islamic Republic of Iran ("MOIS") and the Islamic Revolutionary Guard Corps ("IRGC") and Hezbollah. Iran provided training, financing and weapons to al-Qaeda.

41.     From its creation until 1996, al-Qaeda's operations in Pakistan and Afghanistan were under the protection and support of the HQN through bin Laden's relationships with HQN. Starting in or about 1996, bin Laden and others operated al-Qaeda from their headquarters in Afghanistan, under the protection of the Taliban, and trained foreigners who supported the Taliban's fight to control Afghanistan.

42.     One of the principal goals of al-Qaeda was to drive the United States armed forces out of Saudi Arabia, the Middle East and Somalia by violence. These goals eventually evolved into a declaration of jihad against America and all Americans. Members of al-Qaeda issued "fatwahs" (rulings on Islamic law) indicating that such attacks on Americans were both proper and necessary.

43.     At various times from on or about 1992, bin Laden, working together with members of the fatwah committee of al-Qaeda, disseminated fatwahs to other members and associates of al-Qaeda. These fatwahs directed that United States citizens should be attacked and murdered. On various occasions, bin Laden and other co-conspirators advised members of al-

Qaeda that it was proper to engage in violent actions against "infidels" (nonbelievers), even if others might be killed by such actions, because if the others were "innocent," they would go to paradise, and if they were not "innocent," they deserved to die.

44.     In furtherance of these fatwahs and the objective of removing the United States military from the Middle East, al-Qaeda trained the Taliban's soldiers to fight against the United States. By March 1997, bin Laden had met with Mullah Omar personally and offered to lend his fighters to the Taliban in their battles with northern factions that were still resisting Taliban rule. As bin Laden's deputy, Abu Hafs al-Masri, wrote at the time, "The [Taliban] movement is a capable Islamic entity and it is possible that it can be a turning point for the betterment of the Islamic world. The movement needs a vision and it needs support. It needs someone who will give it a military strategy. And it needs to build a military force which is suitable for the situation in Afghanistan."[6]

### C.  The Taliban and the War in Afghanistan

45.     After the fall of the Republic of Afghanistan in 1992, several of the mujahideen parties that had been opposed to the Republic entered into negotiations to form a national coalition government. However, the civil war quickly resumed as rival groups sought to seize Kabul, the capital city of Afghanistan. While several of the groups proclaimed a new government – the Islamic State of Afghanistan ("ISA") – on April 26, 1992 with the Peshawar Accords, this government never gained significant traction due to continuous fighting between mujahideen.

46.     The Taliban emerged in 1994 in Afghanistan as a faction in the Afghan Civil War. It is an Islamic fundamentalist organization and Pashtun nationalist political movement and was originally led by Mullah Mohammed Omar.

---

[6]     Anne Stenersen, Al-Qaida in Afghanistan at 67-68 (Cambridge Univ. Press, 2017)

47.    In 1995, Jalaluddin Haqqani, founder of the HQN, pledged its allegiance to the Taliban, and the HQN is generally considered a "semi-autonomous" wing or subgroup of the Taliban to this day.

48.    At all times relevant to this action, the HQN was part of the Taliban.

49.    Since at latest shortly after its inception, the Taliban received funding from bin-Laden and other Saudi and Gulf individuals, and the Taliban's government was acknowledged by Pakistan, Saudi Arabia, and the United Arab Emirates.

50.    After pushing mujahideen warlords out of southern Afghanistan and seizing control of Kabul, the Taliban established their government in 1996, under the name the Islamic Emirate of Afghanistan. They never fully controlled Afghanistan and were opposed by ISA loyalists under the name of the Northern Alliance which controlled the northern territory of the country up until the October 2001 invasion of the country by the United States.

51.    All the while, bin Laden and al-Qaeda were training foreign soldiers to support the Taliban's war against the Northern Alliance and to commit acts of terrorism abroad. With the support and protection of the Taliban and the HQN, al-Qaeda went on to engage in acts of international terrorism from their base in Afghanistan, including:

(a)    Suicide bombing of the Khobar Towers residential complex in Saudi Arabia on June 25, 1996;

(b)    Suicide bombings of the United States embassies in Nairobi and Dar es Salaam, on August 7, 1998;

(c)    Suicide bombing of the U.S.S. Cole, on October 12, 2000; and the

(d)    Suicide bombings of the World Trade Center, the Pentagon, and flight 93 on September 11, 2001.

52.    On October 8, 1999, the United States designated al-Qaeda as a Foreign Terrorist

Organization consistent with section 219 of the Immigration and Nationality Act.[7] It is still so

designated.

53.    After the al-Qaeda's attacks on September 11, 2001, the U.S. government

demanded that the Taliban extradite bin Laden to the United States and also expel al-Qaeda

militants from Afghanistan. These demands were refused, and on October 7, 2001, the United

States and the Coalition invaded the country, beginning the War in Afghanistan.

54.    al-Qaeda was designated by the U.N. on 6 October 2001 pursuant to the

provisions of U.N. Security Council Resolution 1267 (1999) and Resolution 1333 (2000) for

"participating in the financing, planning, facilitating, preparing or perpetrating of acts or

activities by, in conjunction with, under the name of, on behalf or in support of", "supplying,

selling or transferring arms and related materiel to" or "otherwise supporting acts or activities of"

bin Laden and the Taliban.

55.    The Taliban was designated a Terrorist Group under Executive Order 13224 on

July 2, 2002, and is still so designated.[8]

56.    After the Taliban's government of Afghanistan was ejected by the American-led

coalition the Taliban leadership, including Mullah Omar, fled to Pakistan.

57.    Afghanistan ratified a new constitution in December 2003, and the Taliban was

not permitted to participate in the formation of the resultant government. In response, the Taliban

---

[7]   List of Designated Foreign Terrorist Organizations.
[8]   Executive Order 13224, U.S. Department of State (accessed April 16, 2025)
      https://www.state.gov/executive-order-13224/#current

proceeded to organize a "shadow" government, seeking to exercise control over the Afghan people.

58.     The Taliban's primary goals in this period were to expel Coalition forces from the country and undermine the new government of Afghanistan. These objectives manifested in increasingly prevalent terrorist attacks, including suicide bombings and bombings by remote detonation.

59.     Al-Qaeda's and the Taliban's close relationship continued long after 9/11. In the years since, it has become clear that the al-Qaeda and Taliban organizations have been fused together: al-Qaeda terrorists have often worked in close conjunction with Taliban terrorists and the affiliated Haqqani Network. In May 2007, Taliban official Mullah Dadullah said, "[W]e and al-Qaeda are as one."[9] In early 2009, a military-intelligence official was quoted as saying, "The line between the Taliban and al Qaeda is increasingly blurred, especially from a command and control perspective."[10] As Lieutenant General Ronald L. Burgess, Jr. reported in a February 2010 Hearing of the Senate Select Committee on Intelligence, "al Qaeda's propaganda, attack planning and support of the Taliban and Haqqani networks continues."[11]

60.     The Taliban and al-Qaeda have remained intimately intertwined. For example, in 2015, Osama bin Laden's successor, Ayman Zawahiri, pledged an oath of allegiance to the recently-installed Taliban leader Mullah Akhtar Mohammad Mansour, who publicly announced

---

[9]    Thomas Ruttig, *The Other Side* at 23, Afghanistan Analysts Network (July 2009).
[10]   Bill Roggio, *Al Qaeda Builds A 'Shadow Army'*, Wash. Times (Feb. 13, 2009).
[11]   Transcript, Hr'g Of The Senate Select Committee On Intelligence Subject: "Current And Projected Threats To The United States", Fed. News Serv., 2010 WLNR 27828348 (Feb. 2, 2010).

his acceptance of the pledge the following day.[12] When Mansour was killed in May 2016, Zawahiri pledged allegiance to his successor, Mawlawi Haibatullah Akhundzada.

61.     Often, individual Taliban leaders are also members of al-Qaeda. For example, in late 2011 or early 2012 the Taliban appointed Sheikh Mohammed Aminullah, who has close ties to al-Qaeda, as the head of its Peshawar Regional Military Shura, which is responsible for attacks in northern and eastern Afghanistan.

62.     Al-Qaeda also encouraged the Taliban to embrace new terrorist techniques. In February 2003, bin Laden issued a recording calling specifically for suicide attacks in Afghanistan and Iraq. Taliban terrorists had previously viewed suicide attacks as taboo, but al-Qaeda convinced them they were religiously permissible. Indeed, al-Qaeda trumpeted their ideological success online, announcing, "While suicide attacks were not accepted in the Afghani culture in the past, they have now become a regular phenomenon!"[13] With al-Qaeda's encouragement and training, the number of such suicide attacks in Afghanistan increased from one in 2002, two in 2003, and six in 2004 to 21 in 2005 and more than 100 in 2006. Al-Qaeda further encouraged these attacks by paying the families of suicide bombers in Afghanistan.

63.     Al-Qaeda's role in that suicide-bombing trend was pivotal. As Islamic history scholar Bryan Glyn Williams explained, "Al Qaeda operatives carried out two to three [suicide]

64.     bombings per year on the Afghan government and NATO troops from 2002 to 2004 that were meant to demonstrate the effectiveness of this alien tactic to the local Taliban.

---

[12]   Thomas Joscelyn & Bill Roggio, *New Taliban Emir Accepts al Qaeda's Oath Of Allegiance*, Long War J. (Aug. 14, 2015).
[13]   Brian Glyn Williams, *Suicide Bombings In Afghanistan*, Jane's Islamic Affairs Analyst at 5 (Sept. 2007).

These demonstrative acts and videos of successful [Al Qaeda] suicide bombings in Iraq seem to have convinced the Taliban to condone the previously taboo tactic of suicide bombing."[14]

65.    Al-Qaeda operatives also served as embedded trainers with Taliban forces. These experienced trainers provided instructions, funding, and resources for conducting local and international attacks. By 2005 at the latest, al-Qaeda began bringing instructors from Iraq to train the Taliban how to fight Americans. For example, al-Qaeda members trained Taliban commanders in bomb-making techniques. Al-Qaeda also invited Taliban commanders to Iraq, where they learned how to make armor-penetrating "shaped" charges,[15] a type of IED later known as an EFP. Taliban trainees also learned how to use remote controls and timers, and urban warfare tactics.

66.    As one writer put it in November 2009, "Small numbers of Al Qaeda instructors embedded with much larger Taliban units have functioned something like U.S. Special Forces do – as trainers and force multipliers."[16]

67.    In addition to Al Qaeda and the HQN, the Taliban and the terror syndicate included several semi-autonomous militant organizations, such as the Kabul Attack Network.

68.    The Kabul Attack Network operated in and around Kabul, where American and coalition forces had a significant presence for much of the War in Afghanistan.

69.    Suicide bombings, particularly vehicle-borne suicide bombings, were a common method of attack employed by the Kabul Attack Network.

---

[14]    Bryan Glyn Williams, *Afghanistan Declassified: A Guide to America's Longest War* at 202 (Univ. Penn. Press 2012).
[15]    Sami Yousafzai, *Unholy Allies*, Newsweek (Sept. 25, 2005).
[16]    Peter Bergen, *The Front*, The New Republic (Oct. 19, 2009).

70.    Over the following several years, the Taliban's presence in Afghanistan continued to grow, and was the primary terrorist organization across the country.

71.    By 2018, the Taliban was active in 70% of Afghanistan.

## II.    IRAN PROVIDED MATERIAL SUPPORT TO AL-QAEDA AND THE TALIBAN FOR THE PURPOSE OF ATTACKING COALITION FORCES

72.    For decades Iran has made the funding of terrorist organizations (including the Special Groups and other terrorists that perpetrated the Terrorist Attacks) and the commodification of international acts of terrorism its business.

73.    Iran has a history of financing, supporting and training terrorists and their affiliates in the perpetration of terrorist attacks against the United States, its citizens and its allies. For example, Hon. Judge John D. Bates found in a lawsuit brought by U.S. victims of the bombing of the U.S. embassies in Nairobi and Dar es Salaam that, "[s]upport from Iran and Hezbollah was critical to al-Qaeda's execution of the 1998 embassy bombings…Prior to its meetings with Iranian officials and agents, al-Qaeda did not possess the technical expertise required to carry out the embassy bombings."[17]

74.    Similarly, Iran has been lavish with its support to all groups (including Sunni groups with ties to al-Qaeda) engaged in acts of international terrorism against Coalition Forces, U.S. nationals, U.S. employees, and employees to contractors fulfilling contracts with the U.S.

75.    Iran prefers not to be directly implicated in acts of international terrorism against U.S. nationals but instead acts through co-conspirators and/or agents and offers bounties for killing U.S. nationals, shooting down U.S. helicopters, and destroying American tanks.

---

[17]  *Wamai v. Republic of Sudan et. al.*, No. 1:08-cv-01349-JDB-JMF (D. D.C. Nov. 30, 2011), Memorandum Opinion at 13–14, ECF No. 55.

76.     Iran primarily supports terrorism through the IRGC, a governmental entity of Iran. It is a quasi-military institution separate from the regular Iranian military. Despite that separation, it is organized like a traditional military and includes an army, navy, air force, militia, and special forces.[18]

77.     The IRGC "has a relatively strict command-and-control protocol and answers directly to the Supreme Leader, Ayatollah Ali Khamenei. It is unlikely that [the IRGC's] actions in Afghanistan would escape the scrutiny of the Guards' top echelon or even Khamenei's office, especially given the scale of Iranian support to the Taliban. Thus, Iranian support for the Taliban is more likely state driven than being the result of purely rogue actions."[19] As the U.S. Treasury Department noted in 2010 when it designated certain IRGC officials pursuant to Executive Order 13224, "Iran also uses the . . . IRGC . . . to implement its foreign policy goals, including, but not limited to, seemingly legitimate activities that provide cover for intelligence operations and support to terrorist and insurgent groups."[20]

78.     Members of the IRGC are officials, employees, or agents of Iran. In light of the IRGC's regular support for terrorist organizations and the strict command structure tying them to Iran's central leadership, members of the IRGC act within the scope of employment when they provide material support to terrorist organizations.

---

[18]   Press Release, U.S. Treasury Dep't, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007) ("*DOT Designation of IRGC & QF*").

[19]   *See* Alireza Nader, Joya Laha, *Iran's Balancing Act in Afghanistan* at 10 (RAND Corp. 2011) ("Iran's Balancing Act") (internal citations omitted).

[20]   Press Release, U.S. Treasury Dep't, *Fact Sheet: U.S. Treasury Department Targets Iran's Support for Terrorism Treasury Announces New Sanctions Against Iran's Islamic Revolutionary Guard Corps-Qods Force Leadership* (Aug. 3, 2010) ("Treasury Sanctions IRGC & QF").

79.    On April 15, 2019, the U.S. State Department designated the IRGC as a FTO.[21] According to the U.S. State Department's public statement explaining the designation, the IRGC "has been directly involved in terrorist plotting; its support for terrorism is foundational and institutional, and it has killed U.S. citizens."[22]

80.    The IRGC has a special foreign division called the Qods Force. The U.S. State Department has observed that "Iran used the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) to implement foreign policy goals, provide cover for intelligence operations, and create instability in the Middle East. The Qods Force is Iran's primary mechanism for cultivating and supporting terrorists abroad."[23] The Qods Force is the driving force behind Iran's activities in Afghanistan, as well as in Iraq and elsewhere in the region.

81.    The Qods Force provides weapons, funding, and training for terrorist operations targeting American citizens, including by supporting terrorist organizations such as al-Qaeda, the Taliban, and the Haqqani Network. Iran's Supreme Leader and central government are aware of and encourage those acts.

82.    In October 2007, the U.S. Treasury Department designated the Qods Force as a SDGT under Executive Order 13224 for providing material support to the Taliban and other terrorist organizations, including Hezbollah and terrorist groups in Iraq.[24] The U.S. Treasury

---

[21]  *See* 84 Fed. Reg. 15278-01 (Apr. 15, 2019).
[22]  Press Release, U.S. State Dep't, *Fact Sheet: Designation of the Islamic Revolutionary Guard Corps* (Apr. 8, 2019).
[23]  U.S. State Dep't, Country Reports on Terrorism 2015 at 300 (June 2, 2016).
[24]  Press Release, U.S. Treasury Dep't, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007)

Department also designated multiple Qods Force members as Specially Designated Nationals pursuant to Executive Order 13224, based on their activities in Afghanistan.[25]

83.    The U.S. State Department designated the Qods Force as a FTO in April 2019, along with the IRGC.[26]

84.    Iran has also used its agent, Hezbollah,[27] to commit terrorist attacks. Hezbollah is a Lebanon-based terrorist group which has been heavily influenced and supported by Iran and specifically Ayatollah Khomeini since its founding in 1982. In 1985 it officially aligned itself with the Iranian government and Khomeini's leadership, and has acted as an Iranian proxy since then. As Ali Akbar Mohtashemi (a Hezbollah founder, former Iranian ambassador to Syria and Lebanon, and former Iranian Minister of Interior) explained, "[Hezbollah] is part of the Iranian rulership; [Hezbollah] is a central component of the Iranian military and security establishment; the ties between Iran and [Hezbollah] are far greater than those between a revolutionary regime with a revolutionary party or organization outside its borders."[28]

85.    Since the United States-led overthrow of the Taliban-controlled government in Afghanistan in 2001, terrorists have repeatedly attacked American service members and civilians

---

[25] *Id.*
[26] *See* 84 Fed. Reg. 15278-01 (Apr. 15, 2019).
[27] Several decisions in this District have held that Hezbollah is a proxy of Iran. *See Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 61 (D.D.C. 2018), *Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53-55 (D.D.C. 2018); *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 53 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 292 (D.D.C. 2003).
[28] Col. (ret.) Richard Kemp and Maj. (ret.) Charles Driver-Williams, *Killing Americans and Their Allies: Iran's Continuing War against the United States and the West*, Jerusalem Ctr. For Public Affairs (2015) ("*Killing Americans and Their Allies*"), http://jcpa.org/killing-americans-allies-irans-war/.

working to rebuild Afghanistan and support its elected government. Iran provided material support for those Attacks, which injured Plaintiffs.

86.    While the Taliban were typically the immediate perpetrators in the Attacks which injured Plaintiffs, several terrorist groups, subgroups, and partnerships worked in concert and shared resources, personnel, and operational plans. Indeed, the Taliban and al-Qaeda often participated in mafia-style meetings, attended by the leaders of several allied terrorist groups in which they planned and authorized various terrorist attacks throughout Afghanistan.[29] Given such coordination, one former CIA official and senior White House advisor called the resulting terrorist superstructure a "syndicate," composed of al-Qaeda, the Taliban, and several allied FTOs.[30] In fact, bin Laden himself conceived of al-Qaeda as the leader of a broader coalition of terrorists drawing from other terrorist organizations in Pakistan and Afghanistan.[31]

87.    Iran's support for multiple components of this "syndicate" generally and for the Taliban specifically ensured that its support had maximum effect. Due to the mutually reinforcing ties between the Taliban and al-Qaeda in Afghanistan, support for the one benefited the other and vice versa. Iran recognized those interrelationships and so spread its support across multiple parts of the Afghan terror syndicate. In doing so, Iran was able to achieve its intended effect: wide-ranging terrorist attacks against Americans, executed mostly by the Taliban but supported by (and sometimes jointly committed with) al-Qaeda and the other components of the syndicate.

---

[29]    *See* Bill Roggio and Thomas Joscelyn, *The al Qaeda – Taliban Connection*, Wash. Exam'r (July 4, 2011) ("*The al Qaeda-Taliban Connection*"), archived at https://www.washingtonexaminer.com/weekly-standard/the-al-qaeda-taliban-connection.

[30]    Bruce Riedel, *Deadly Embrace: Pakistan, America, And The Future Of The Global Jihad* at 1 (Brookings Inst. Press 2d ed. 2011).

[31]    *The al Qaeda-Taliban Connection.*

88.     Following the 9/11 attacks on the United States, Iran met with senior Taliban officials to offer military aid to support the Taliban's fight against U.S.-led Coalition forces. Iran planned that meeting and hosted it on the Iranian side of the Afghanistan border. As part of this initial offer of support, Iran pledged to sell advanced military equipment to the Taliban for use against U.S. and allied forces, boasted of Iran's ability to track U.S. troop movements, and promised to allow terrorists entering Afghanistan to travel through Iranian territory. Iran also provided safe harbor to Taliban leaders who escaped U.S. forces.

89.     Immediately following the U.S. invasion of Afghanistan, Iran made a pretense of professing support for the U.S. and NATO mission, but in reality was already seeking to undermine it. In February 2002, then-CIA Director George J. Tenet testified before Congress that "initial signs of Tehran's cooperation and common cause with us in Afghanistan are being eclipsed by Iranian efforts to undermine US influence there. While Iran's officials express a shared interest in a stable government in Afghanistan, its security forces appear bent on countering the US presence."[32] As one scholar explained, Iran "feared the US might use Afghanistan as a base from which to launch a kinetic attack on Iran. The Taliban insurgency thus became viewed by Tehran as a tool with which to keep American forces preoccupied."[33]

90.     The U.S. government documented Iran's escalating support for the Taliban terrorists over the course of the United States' involvement in Afghanistan. In April 2007, General Peter Pace, Chairman of the U.S. Joint Chiefs of Staff, stated that Iranian explosives had been captured in Kandahar Province en route to the Taliban but acknowledged that it was not yet

---

[32]  DCI Testimony, *Converging Dangers in a Post 9/11 World*, Central Intelligence Agency (Feb. 6, 2002).
[33]  Farhad Rezaei, *Iran and the Taliban: A Tactical Alliance?*, The Begin-Sadat Center for Strategic Studies (Jan. 15, 2019) ("*Iran and the Taliban: A Tactical Alliance?*").

entirely clear who within Iran was responsible.[34] The next day, U.S. Assistant Secretary of State Richard Boucher described "a series of indicators that Iran is maybe getting more involved in an unhealthy way in Afghanistan."[35]

91.    Those indicators rapidly grew in intensity, and soon there was little doubt that Iran was actively sponsoring the Taliban terrorists as a core part of its foreign policy. A purported May 2007 U.S. State Department cable (as published online), for example, reported that Afghan President Hamid Karzai had expressed concerns "over Iranian agents engaging Taliban and supplying them with weapons." A purported July 2007 U.S. State Department cable (as published online) similarly reported that Taliban terrorists had received "light weapons and grenade launchers [that] bore the stamps of the Iranian factories where they were manufactured, primarily in 2006 and 2007." The same cable explained that the fighters claimed they ha received training in Iran and had been promised access to antiaircraft rockets by Iranian officials. A purported military-intelligence summary the next month (as published online), reported on an "'alarmingly rapid increase' in Iranian presence in Afghanistan."

92.    When the U.S. Treasury Department designated the Qods Force as a SDGT later in 2007, it confirmed that the "Qods Force provides weapons and financial support to the Taliban to support anti-U.S. and anti-Coalition activity in Afghanistan."[36] As the designation explained:

> The Qods Force is the Iranian regime's primary instrument for providing lethal support to the Taliban. The Qods Force provides weapons and financial support to the Taliban to support anti-U.S. and anti-Coalition activity in Afghanistan. Since at least 2006, Iran has arranged frequent shipments of small arms and associated ammunition, rocket propelled grenades, mortar rounds, 107mm rockets, plastic explosives, and probably man-portable defense systems to the Taliban. . . . Through

---

[34]  Breffni O'Rourke, *Afghanistan: U.S. Says Iranian-Made Weapons Found*, RadioFreeEurope (Apr. 18, 2007).

[35]  *Id.*

[36]  *DOT Designation of IRGC & QF.*

Qods Force material support to the Taliban, we believe Iran is seeking to inflict casualties on U.S. and NATO forces.[37]

93.     Similar observations continued in 2008. According to the U.S. State Department's 2008 Country Reports on Terrorism: "The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hizballah, Iraq-based militants, and Taliban fighters in Afghanistan." [38]

94.     By April 2010, the U.S. Department of Defense reported that Iran was "covertly" supporting the Taliban. "Arms caches have been recently uncovered with large amounts of Iranian manufactured weapons, to include l07mm rockets, which we assess IRGC-QF delivered to Afghan militants."[39] It further explained that "Tehran's support to the Taliban is inconsistent with their historic enmity, but fits with Iran's strategy of backing many groups to ensure that it will have a positive relationship with the eventual leaders."[40]

95.     On August 3, 2010, the U.S. Treasury Department – pursuant to Executive Order 13224 – designated General Hossein Musavi and Colonel Hasan Mortezavi, senior officials in the Qods Force, as SDGTs for their roles in supporting the Taliban.[41] General Musavi was the leader of the Ansar Corps, also known as the Fourth Corps, the branch of the Qods Force responsible for carrying out activities within Afghanistan.[42] The U.S. Treasury Department found

---

[37]   *Id*.
[38]   U.S. State Dep't, *Country Reports on Terrorism 2008* at 182-183 (Apr. 2009).
[39]   Unclassified Report on Military Power of Iran (Apr. 2010), https://fas.org/man/eprint/dod_iran_2010.pdf.
[40]   *Id*.
[41]   *Treasury Sanctions IRGC & QF*, *supra*.
[42]   *Id*.

that both General Musavi and Colonel Mortezavi, acting in their capacity as senior Qods Force officers, had provided "financial and material support to the Taliban."[43] The U.S. Treasury Department further concluded that "the IRGC-QF provides select members of the Taliban with weapons, funding, logistics and training."[44]

96.    General David Petraeus, then the Commander of the International Security Assistance Force ("ISAF"), testified before the Senate Armed Services Committee in March 2011 that Iran "without question" supplied weapons, training, and funding to the Taliban in order to "make life difficult" for U.S. and NATO forces in Afghanistan.[45]

97.    When the U.S. Department of Defense provided Congress with its Annual Report on Military Power of Iran in April 2012, it explained that, even though Iranian "support to the Taliban is inconsistent with their historic enmity, it complements Iran's strategy of backing many groups to maximize its influence while also undermining U.S. and [NATO] objectives by fomenting violence."[46] By means of "the IRGC-QF, Iran provides material support to terrorist or militant groups such as . . . the Taliban."[47] The U.S. Department of Defense characterized the support as part of a "grand strategy" to "challeng[e] U.S. influence."[48]

98.    In its 2012 Report on Progress Toward Security and Stability in Afghanistan, the U.S. Department of Defense reported to Congress that Iran was engaging in "covert activities" in

---

[43]    *Id*.
[44]    *Id*.
[45]    *The Situation in Afghanistan: Hr'g Before the S. Comm. On Armed Services*, 112 Cong. 40 (Mar. 15, 2011) (statement of General David Petraeus), https://www.govinfo.gov/content/pkg/CHRG-112shrg72295/pdf/CHRG-112shrg72295.pdf ("*March 15, 2011 Hr'g Before the S. Comm. On Armed Services*").
[46]    Annual Report on Military Power of Iran 2 (Apr. 2012).
[47]    *Id*.
[48]    *Id*.

Afghanistan, including the provision of weapons and training to the Taliban.[49] As the report explained, "Since 2007, Coalition and Afghan forces have interdicted several shipments of Iranian weapons. Tehran's relationship with the insurgency, although not ideologically based, is consistent with Iran's short- to mid-term goal of undermining Coalition efforts and opposing the international military presence in Afghanistan."[50]

99.    Less than two years later, the U.S. Treasury Department concluded that the Qods Force "utilized now-detained Afghan associate, Sayyed Kamal Musavi, who was designated today, to plan and execute attacks in Afghanistan." It further confirmed that "[t]wo IRGC-QF officers also designated today, Alireza Hemmati and Akbar Seyed Alhosseini, provided logistical support to this associate."[51] Similarly, according to a Taliban commander in central Afghanistan in 2015: "Iran supplies us with whatever we need."[52]

100.    In 2016, Taliban leader Mullah Mansour was killed by an American drone strike while returning to Afghanistan from Tehran, where he had been meeting with Iranian security officials, and possibly directly with Ayatollah Ali Khameni, to discuss tactical coordination of Taliban terrorist activities in Afghanistan. He had made at least two visits to Iran since 2013.

101.    Iran's support for terrorist groups in Afghanistan has continued. The U.S. State Department stated in 2017 that "Iran is responsible for intensifying multiple conflicts and undermining the legitimate governments of, and U.S. interests in, Afghanistan . . . ."[53] The U.S.

---

[49]  U.S. Dep't of Def., *Report on Progress Toward Security and Stability in Afghanistan* at 148 (Dec. 2012).

[50]  *Id.*

[51]  Press Release, *U.S. Treasury Dep't, Treasury Targets Networks Linked To Iran* (Feb. 6, 2014).

[52]  Margherita Stancati, *Iran Backs Taliban With Cash And Arms*, Wall St. J. (June 11, 2015).

[53]  *Country Reports on Terrorism 2017* at Foreword.

Department of Defense similarly confirmed that Iran "provides some support to the Taliban and Haqqani Network."[54] In May 2018, U.S. Secretary of State Michael Pompeo publicly accused Iran of supporting the Taliban and other terrorist groups in Afghanistan.[55]

102.    In October 2018, the U.S. Treasury Department, pursuant to Executive Order 13224, designated additional Qods Force officials "for acting for or on behalf of IRGC-QF and for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, the Taliban."[56]

103.    The Secretary of Iran's Supreme National Security Council, Ali Shamkhani, publicly acknowledged Iran's support for the Taliban in January 2019, claiming that it was designed to "curb[] the security problems in Afghanistan."[57]

104.    Consistent with Iran's opposition to American presence and influence in Afghanistan, Iran provided material support for the Terrorist Attacks which injured Plaintiffs or their family members. This support took the form of "currency . . . lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, . . . and transportation."[58]

### A.  Iran Supplied the Taliban with Weapons, Lethal Substances, and Explosives

105.    Iran provided material support or resources for the acts of extrajudicial killing that injured Plaintiffs, or their family members, by providing (among other things) weapons,

---

[54]  U.S. Dep't of Def., *Enhancing Security and Stability in Afghanistan* at 21 (June 2017).
[55]  *Mike Pompeo speech: What are the 12 demands given to Iran?*, Al Jazeera News (May 21, 2018).
[56]  Press Release, U.S. Treasury Dep't, *Treasury and the Terrorist Financing Targeting Center Partners Sanction Taliban Facilitators and their Iranian Supporters* (Oct. 23, 2018).
[57]  *Iran and the Taliban: A Tactical Alliance?*
[58]  18 U.S.C. § 2339A(b)(1).

explosives, and lethal substances to the Taliban. Many of the weapons Iran provided were designed to be particularly effective against U.S. and allied forces operating in Afghanistan. For example, Iran provided the Taliban with anti-tank mines, long range rockets, explosively formed penetrators, suicide vehicle-borne improvised explosive devices, rocket-propelled grenades, and explosives, which were uniquely suited for terrorist attacks on U.S. and allied forces.

106.    U.S. and allied forces have seized large caches of Iran-made weapons and explosives in Afghanistan, many of which bore markings of Iranian origin. A purported April 2007 military-intelligence summary (as published online) reported that "Iranian officials" were sending "to Afghanistan explosive devices and vehicles ready to be used as SVBIEDs [suicide vehicle-borne improvised explosive devices]."[59] A purported U.S. government document from August of that year (as published online) also reported that the Afghanistan National Police had found evidence of a planning meeting for 25 suicide attacks in which it was stated that "[t]he materials for the bombs will be supplied by Iran Government . . . ."

107.    When the U.S. Treasury Department designated the Qods Force as a SDGT under Executive Order 13224 in October 2007, it specifically documented Iran's frequent shipments of weapons to the Taliban over at least the prior year. A purported December 2007 military intelligence summary (as published online) further reported that explosive samples in suicide vests seized from four suicide bombers "tasked by Taliban/Al-Qaeda leaders" with carrying out a

---

[59]    *Afghanistan War Logs: Anti-aircraft Missiles Clandestinely Transported From Iran Into Afghanistan – US Report*, The Guardian (July 25, 2010) ("Anti-aircraft Missiles Clandestinely Transported"); *see also Afghanistan War Logs: Afghan Government Seeking to Maintain Friendly Relations With Iran*, The Guardian (July 25, 2010) (referencing Iranian-made weapons found in Kandahar Province)

suicide attack in Helmand Province were found to be a 92% probability of a match against a suspected sample of Iran-sourced C4.

108.    In January 2008, a raid by Afghan Police in Farah Province discovered 130 mines, of which the Afghan Police concluded 60 were Iran-made.[60] That same month the U.S. Ambassador to Afghanistan stated that "[t]here is no question that elements of insurgency have received weapons from Iran."[61]

109.    A purported June 2008 U.S. State Department cable (as published online) detailed multiple instances of Iran transferring arms to the Taliban in 2007 and 2008 and concluded that analyses of the weaponry "indicate the Taliban had access to Iranian weaponry produced as recently as 2006 and 2007." Similarly, Afghan forces discovered a large cache of Iran-made explosives hidden near the Bakhshabad Dam in Farah Province in March 2009. That same month, a purported military-intelligence summary (as published online) indicated that Taliban commanders had obtained portable surface-to-air missiles that originated in Iran.

110.    In May 2009, 44 bricks of Iran-made explosives and dozens of Iran-made mortars were discovered in a Taliban stronghold in Helmand Province. Also in May 2009, Afghanistan border police intercepted a shipment crossing the Iranian border with dozens of anti-tank mines bound for Afghan militants. And in September 2009, a purported military-intelligence summary report (as published online) claimed that the Taliban had received "six very powerful anti-tank mines from Iran" to target ISAF forces or important Afghan Police Officers. That same year, the U.S. State Department reported that, "[s]ince at least 2006, Iran has arranged arms shipments to

---

[60]   Eric Parks, *Iranian Weapons Smuggling Activities in Afghanistan* at 10, JIEDDO J2 Open Source Augmentation and Analysis Cell (Sept. 3, 2009) ("JIEDDO Report").

[61]   Brian Bennett, *Iran Raises the Heat in Afghanistan*, Time (Feb. 22, 2008).

select Taliban members, including small arms and associated ammunition, rocket-propelled grenades, mortar rounds, 107mm rockets, and plastic explosives."[62]

111.    By 2011, Taliban terrorists were using Iran-made and -sourced long-range rockets to attack Coalition targets in Afghanistan. In February 2011, British forces intercepted more than four dozen 122-milimeter rockets in Nimruz Province near the Iranian border, which gave the terrorists roughly double the range to attack Coalition targets. British Foreign Secretary William Hague stated that "detailed technical analysis, together with the circumstances of the seizure, leave us in no doubt that the weaponry recovered came from Iran."[63] The Wall Street Journal similarly reported that U.S. officials "said the rockets' markings, and the location of their discovery, give them a 'high degree' of confidence that they came from the Revolutionary Guard's overseas unit, the Qods Force."[64] General Petraeus later confirmed that the Qods Force had supplied these rockets to a "known Taliban facilitator."[65] The U.S. Department of Defense's 2011 Report on Progress Toward Security and Stability in Afghanistan similarly stated that "[f]orensics teams examined the rockets and confirmed an Iranian point of origin."[66]

112.    Iran also provided EFPs to the Taliban. EFPs are specially shaped charges, first used by Hezbollah in Lebanon, which typically employ a manufactured concave copper disk and an explosive-packed liner. Thus, when Iran "smuggled [EFPs] to Afghan insurgents for use against U.S. Forces,"[67] Iran supplied the Taliban with a particularly lethal form of support.

---

[62]  U.S. State Dep't, *Country Reports on Terrorism 2009* at 192 (Aug. 2010).
[63]  Julian Borger & Richard Norton-Taylor, *British Special Forces Seize Iranian Rockets In Afghanistan*, The Guardian (Mar. 9, 2011).
[64]  Jay Solomon, *Iran Funnels New Weapons to Iraq and Afghanistan*, Wall St. J. (July 2, 2011).
[65]  March 15, 2011 Hr'g Before the S. Comm. On Armed Services.
[66]  U.S. Dep't of Def., *Report on Progress Toward Security and Stability in Afghanistan* at 107 (Apr. 2011).
[67]  JIEDDO Report at 1.

Indeed, Iran and Hezbollah designed EFPs to defeat armored vehicles like the ones used by Coalition forces in Afghanistan. Those EFPs gave the Taliban a sophisticated anti-American weapon that it could not have obtained or deployed effectively on its own.

113.    By 2007, the JIEDDO concluded that Iran was attempting to "inflict psychological damage" on the United States by smuggling EFPs "to Afghan insurgents for use against U.S. Forces."[68]

114.    Iran also provided the Taliban with rockets and similar weapons that were particularly effective against U.S. and Coalition forces. A purported April 2007 military intelligence summary (as published online), for example, reported that Iran had purchased antiaircraft missiles from Algeria in late 2006 and then smuggled them from Mashhad, Iran – where the Fourth Corps of the Qods Force is headquartered – into Afghanistan.[69] A purported Afghanistan Police Report from the next month (as published online) claimed that Iran intelligence sources issued three anti-aircraft launchers and ammunition to a Taliban commander. A purported March 2009 military intelligence summary (as published online) included intelligence reports of portable surface-to-air missiles arriving in Afghanistan from Iran.

115.    Similarly, a purported July 2009 military-intelligence summary (as published online) included reports of two dozen "Stinger" style surface-to-air missiles smuggled from Iran into Afghanistan.

116.    According to a purported September 2009 military-intelligence summary (as published online), Taliban terrorists used an Iran-made rocket-propelled grenade launcher to shoot down Coalition helicopters. The launcher was marked "Made In Iran." The launcher was

---

[68]   *Id*. at 3.
[69]   *Anti-aircraft Missiles Clandestinely Transported*.

particularly effective because, unlike some other launchers, the Iran-made launcher had a scope that could be adjusted for targeting and was more accurate for shooting helicopters.

### B. Iran Provided The Taliban With Lodging, Training, Expert Advice or Assistance, Safehouses, Personnel, and Transportation

117.    Iran also provided members of the Taliban and affiliated terrorist groups with lodging, training, expert advice or assistance, safe harbor, and transportation. Iran taught the Taliban attack techniques that were particularly effective against U.S. and Coalition forces. Without the training from Iran and its agents, the Taliban would not have been able to launch as successful a terrorist campaign against American forces.

118.    According to a purported June 2006 military-intelligence summary (as published online), two members of the Iranian Intelligence Secret Service had arrived in Parwan Province to help Taliban members "in carrying out terrorist attacks against the [Afghanistan] governmental authorities and the [Coalition] members, especially against the Americans forces."[70] A purported military-intelligence summary later that year (as published online), reported that injured Taliban terrorists were evacuating to Tehran for shelter.[71]

119.    Iran also trained Taliban fighters at camps within Iran. For example, a purported April 2007 military intelligence summary (as published online) reported that "Iranian officials train" members of the Taliban at an Iranian base in Birjand, Iran, near the Afghanistan border.[72] A similar purported June 2007 military intelligence summary (as published online) claimed that the IRGC was training roughly 300 foreign fighters in Iran, presumably to fight in Afghanistan.

---

[70]  *Afghanistan War Logs: US Claims Iran Spies Helping Insurgents to Attack Coalition Forces*, The Guardian (July 25, 2010).
[71]  *Afghanistan War Logs: Iranians Alleged to Be Sheltering Wounded Taliban Fighters in Tehran*, The Guardian (July 25, 2010).
[72]  *Anti-aircraft Missiles Clandestinely Transported*.

120.     A purported military-intelligence summary (as published online) from May 2008 claimed that a Taliban commander had traveled to Iran for training and returned with 40 trained terrorists. Similarly, a military-intelligence summary (as published online) from July 2008 referenced "trained fighters moving in from Iran." And a purported military-intelligence summary (as published online) from October 2009 likewise reported on the return of a Taliban commander from training "in an Iran army barracks."

121.     Iran provided Taliban terrorists with specialized training on how best to deploy Iran-supplied weapons against U.S. and Coalition forces. A purported December 2008 military intelligence summary (as published online) reported on a group of 40 insurgents "who allegedly were trained in an Iranian Military base" who had plans to attack the capital of Farah Province using weapons that "Iran Intelligence could have provided." According to a purported April 2009 military-intelligence summary (as published online), Iran was recruiting Taliban terrorists for training in Iran on shooting down Coalition helicopters. And another purported April 2009 military-intelligence summary (as published online), reported on the return of a Taliban commander after receiving IED-manufacturing training in Iran.

122.     A March 21, 2010 article in London's The Sunday Times reported extensively on Iranian security officials training Taliban recruits to "ambush" Coalition forces, attack checkpoints, and use guns and IEDs. The Times interviewed two Taliban commanders – from Wardak and Ghanzi province – who had traveled to Iran with groups of Taliban terrorists for training, which improved their ability to launch lethal attacks on Coalition forces. According to the commanders, Iran paid for this travel and training. One commander who received training in

Iran observed that the Taliban's and Iran's "religions and . . . histories are different, but our target is the same — we both want to kill Americans."[73]

123.    By 2009, U.S government officials were openly accusing the IRGC of training the Taliban. In an August 2009 report, ISAF Commander General Stanley McChrystal explained that "the Iranian Qods Force is reportedly training fighters for certain Taliban groups and providing other forms of military assistance to insurgents."[74] He confirmed again in May 2010 that Iran was training Afghan fighters in Iran.[75] In its 2009 Country Reports on Terrorism, the U.S. State Department reported: "Iran's Qods Force provided training to the Taliban in Afghanistan on small unit tactics, small arms, explosives, and indirect fire weapons . . . ."[76] Similarly, in 2012 it explained: "the IRGC-QF trained Taliban elements on small unit tactics, small arms, explosives, and indirect fire weapons, such as mortars, artillery, and rockets."[77]

124.    Iran's training of Taliban terrorists has not diminished. By 2015, the IRGC was operating at least four Taliban training camps within Iran.

125.    Iran also facilitated the Taliban's attacks by allowing the Taliban to establish offices in Iran to serve as bases for planning terrorist attacks. For example, Iran permitted a senior leader of the Taliban to set up an office in Zahedan, Iran, near the borders with Afghanistan and Pakistan. In or about 2014, the Taliban also opened an office in Mashhad, Iran,

---

[73]  Miles Amoore, *Iranian military teaches Taliban fighters the art of ambush*, The Times (Mar. 21, 2010).

[74]  Quoted by Sajjan M. Gohel, in *Iran's Ambiguous Role in Afghanistan* at 13, CTC Sentinel (March 2010).

[75]  *Killing Americans and Their Allies*.

[76]  U.S. State Dep't, *Country Reports on Terrorism 2009* at 192 (Aug. 2010).

[77]  U.S. State Dep't, *Country Reports on Terrorism 2012* at 196 (May 2013).

where the Fourth Corps of the Qods Force is headquartered.[78] As of January 2019, the Taliban maintained an office in Tehran, Iran.[79]

126.    Iranian fighters also conducted attacks alongside Taliban terrorists. In an October 2016 Taliban attack in Farah Province, four senior Iranian commandos were killed, and many of the other Taliban dead were taken across the border to Iran for burial.

127.    Mohammad Arif Shahjahan, the governor of Farah Province in western Afghanistan, told Radio Free Afghanistan in 2017 that Taliban leaders had been traveling frequently to Iran, where they received protection and support.[80] He reported that Qods Force operatives had recently met with and advised the Taliban in Farah Province.[81]

128.    Iran's training of Taliban terrorists in small unit tactics, small arms, explosives, indirect fire, and other techniques enabled the Taliban to more effectively attack U.S. forces and Coalition forces. The Taliban and affiliated terrorist groups in Afghanistan used Iran's training to kill or injure Plaintiffs or their family members.

### C. Iran Provided Financial Support to the Taliban

129.    Iran has also supported the Taliban financially. On an annual basis, Iran provided large cash payments to the Taliban. For example, a purported February 2005 military intelligence summary (as published online) reported that the IRGC delivered 10 million Afghanis (worth

---

[78]  Oved Lobel, *Afghanistan: The Forgotten Front Against Iran*, Australia/Israel & Jewish Affairs Council (Nov. 16, 2018).

[79]  *Iran and the Taliban: A Tactical Alliance?*

[80]  Abubakar Siddique & Noorullah Shayan, *Mounting Afghan Ire Over Iran's Support For Taliban*, Gandhara (July 31, 2017) ("*Mounting Afghan Ire Over Iran's Support For Taliban*").

[81]  *Id.*

roughly $212,000) to a location on Iran's border where the money was transferred to four members of a Taliban-associated terrorist group.[82]

130.    Iran also directly paid Taliban insurgents to kill U.S. forces. Another purported February 2005 military-intelligence summary (as published online) reported on a Taliban group that was being paid by the Iranian government $1,740 for each Afghanistan soldier killed and $3,481 for each Government of Afghanistan official killed. The report further explained that the group would begin attacking U.S. forces if the attacks on Afghans were successful.[83] Iran paid Taliban terrorists an estimated $1,000 for each U.S. soldier murdered in Afghanistan and $6,000 for each destroyed American military vehicle. In one specific example, Taliban fighters received $18,000 from Iran as a reward for an attack in 2010 than killed several Afghan forces and destroyed an American armored vehicle.[84]

131.    Iran also provided funding to individual Taliban commanders, often as they were returning to Afghanistan from training in Iran. A purported May 2008 military-intelligence summary (as published online) reported on a Taliban leader returning from training in Iran "along with a considerable amount of money." A purported May 2009 U.S. State Department cable (as published online) stated that the IRGC may provide Taliban Commander Mullah Sangin with financial support to engage Coalition forces, including U.S. contractors.

---

[82] *Afghanistan War Logs: Iran Smuggles Money into Afghanistan to Fund Insurgents, says US Report*, The Guardian (July 25, 2010).

[83] *Afghanistan War Logs: Iran Offers Reward for Each Afghan Official and Solider Killed, According to Coalition Report*, The Guardian (July 25, 2010).

[84] Miles Amoore, *Iran pays the Taliban to Kill US Soldiers*, The Times (Sept. 5, 2010).

132.    Iran has also supported the Taliban's finances by supporting its ability to traffic narcotics, which Taliban terrorists use "to finance their acts of terror and violence."[85] As the U.S. Treasury Department explained when it designated Iranian Qods Force General Gholamreza Baghbani as a Specially Designated Narcotics Trafficker in March 2012, General Baghbani allowed Afghan narcotics traffickers to smuggle opiates through Iran, facilitated the smuggling of chemicals necessary to produce heroin from Iran into Afghanistan, and helped "facilitate shipments of opium into Iran."[86] General Baghbani also had narcotics traffickers deliver weapons on his behalf to the Taliban.[87]

133.    As reported in a 2015 *Wall Street Journal* article, a Taliban commander described Iran's financial support of the Taliban in the form of recruiting and paying individual terrorists. The commander explained that he had been detained for working illegally in Iran when he was approached by the IRGC and offered double his previous salary – to be paid by Iran – if he fought with the Taliban in Afghanistan.[88] And in 2017, officials in Ghor Province accused Iran of financing a Taliban offensive that briefly enabled the Taliban to overtake a key district.[89]

**D.    Iran Provided Material Support to al-Qaeda.**

134.    Iran has also long provided material support to al-Qaeda. As with the Taliban, the sectarian differences between the Shiite regime in Tehran and the Sunni al-Qaeda leadership have not hindered cooperation between the groups. Whatever their religious differences, both groups share a hatred of America and support anti-American violence.

---

[85]  Press Release, U.S. Treasury Dep't, *Treasury Targets Taliban Shadow Governor of Helmand Afghanistan as Narcotics Trafficker* (Nov. 15, 2012).
[86]  Press Release, U.S. Treasury Dep't, *Treasury Designates Iranian Qods Force General Overseeing Afghan Heroin Trafficking Through Iran* (Mar. 7, 2012).
[87]  *Id.*
[88]  Margherita Stancati, *Iran Backs Taliban With Cash And Arms*, Wall St. J. (June 11, 2015).
[89]  *Mounting Afghan Ire Over Iran's Support For Taliban*.

135.    Iran has supported al-Qaeda's terrorist activities since the early 1990s, when Osama bin Laden lived in Sudan. Iran, through the IRGC and Hezbollah, served as the original trainer for al-Qaeda with respect to suicide bombings, attacks against large buildings, IEDs, explosives, intelligence, and general attack tactics directed at American interests. For example, senior al-Qaeda operatives traveled to Iran and Lebanon during this period to camps run by Hezbollah and sponsored by the Qods Force.[90] The operatives received advanced explosives training that enabled al-Qaeda to launch large-scale terrorist attacks on American embassies in Africa.[91] According to one senior al-Qaeda official, trainers at this time were already researching how to develop shaped charges to pierce armor plating – the technology later perfected in EFPs.

136.    When the U.S. Department of Justice indicted Osama bin Laden for the 1998 bombings of the U.S. embassies in Kenya and Tanzania, the indictment alleged that al-Qaeda had "forged alliances" with "the government of Iran and its associated terrorist group Hezballah [sic] for the purpose of working together against their perceived common enemies in the West, particularly the United States."[92] This Court subsequently found that Iran had caused the East Africa Embassy bombings by materially supporting al-Qaeda's operations.[93]

137.    Following the September 11, 2001 attacks on the United States, Iran provided safe harbor to many senior leaders of al-Qaeda and their families, including bin Laden's sons. Iran permitted these senior leaders to move freely within Iran in the early 2000s, while they continued

---

[90]  *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 151 (D.D.C. 2011) ("Prior to al Qaeda members' training in Iran and Lebanon, al Qaeda had not carried out any successful large scale bombings.") ("*Owens* Opinion").

[91]  *Id.*

[92]  Indictment at 3, *United States v. Bin Laden*, No. 1:98-cr-00539-LAK (S.D.N.Y. filed Nov. 5, 1998), Dkt. 1, available at https://fas.org/irp/news/1998/11/indict1.pdf.

[93]  *Owens* Opinion.

to direct, organize, and support al-Qaeda's terrorist operations throughout the world.[94] In

essence, Iran provided al-Qaeda with a safe location to orchestrate its terrorist activities.[95]

138.    In 2007, Osama bin Laden discouraged terrorist attacks against Iran because of its

historical support for al-Qaeda's terrorist operations, and he referred to Iran as al-Qaeda's "main

artery for funds, personnel, and communication."[96] Similarly, a letter reportedly written by al-

Qaeda's second-in-command, Ayman al-Zawahiri, thanked the IRGC for its support in setting up

al-Qaeda's terrorist network in Yemen in 2008.

139.    In 2012, the Council on Foreign Relations reported that "al-Qaeda has stepped up

its cooperation on logistics and training with Hezbollah, a radical, Iran-backed Lebanese militia

drawn from the minority Shiite strain of Islam."[97]

140.    The U.S. government has also recognized these connections. In July 2011, the

U.S. Treasury Department designated as SDGTs six members of al-Qaeda operating in Iranunder

a secret agreement between Iran and al-Qaeda.[98] The agreement provided that al-Qaeda terrorists

"must refrain from conducting any operations within Iranian territory and recruiting operatives

inside Iran while keeping Iranian authorities informed of their activities. In return, the

---

[94]  *Id.*
[95]  *Id.* at 150-51 ("When a foreign sovereign allows a terrorist organization to operate from its territory, this meets the statutory definition of 'safehouse.'").
[96]  October 18, 2007 translated letter from Osama bin Laden to Karim at 1, *Bin Laden's Bookshelf,* Office of the Director of National Intelligence, https://www.dni.gov/files/documents/ubl2016/english/Letter%20to%20Karim.pdf. In March 2016, the Office of the Director of National Intelligence declassified items that had been obtained by U.S. special operators in the May 2011 raid on bin Laden's compound, including this letter. *See* Bin Laden's Bookshelf, Office of the Director of National Intelligence, https://www.dni.gov/index.php/features/bin-laden-s-bookshelf?start=2
[97]  *al-Qaeda (a.k.a. al-Qaida, al-Qa`ida)*, Council on Foreign Relations (June 6, 2012), https://www.cfr.org/backgrounder/al-qaeda-aka-al-qaida-al-qaida.
[98]  Press Release, U.S. Treasury Dep't, *Treasury Targets Al-Qa`ida Funding and Support Network Using Iran as a Critical Transit Point* (July 28, 2011).

Government of Iran gave the Iran-based al-Qa'ida network freedom of operation and uninhibited ability to travel for extremists and their families" and permitted al-Qaeda to use Iran as a "critical transit point for funding to support [al-Qaeda's] activities in Afghanistan and Pakistan." The Treasury Department found that "Iran's secret deal with al-Qa'ida" facilitated a terrorist network that "serves as the core pipeline through which al-Qa'ida moves money, facilitators and operatives from across the Middle East to South Asia."[99] Indeed, al-Qaeda has honored its commitment to Iran despite its attacks on Shi'a Muslims elsewhere in the Middle East.

141.    The U.S. Treasury Department has repeatedly recognized the link between al-Qaeda and Iran in making SDGT designations under Executive Order 13224. In February 2012, the agency designated the Iranian Ministry of Intelligence and Security as a terrorist-sponsoring entity for, among other things, supporting al-Qaeda.[100] In 2014, the agency likewise designated a "key Iran-based" al-Qaeda facilitator who has "assisted extremists and operatives transiting Iran on their way into and out of Pakistan and Afghanistan."[101]

142.    The close relationship between al-Qaeda and Iran has continued in recent years. In 2017, the U.S. State Department explained, "Since at least 2009, Iran has allowed AQ facilitators to operate a core facilitation pipeline through the country, enabling AQ to move funds and fighters to South Asia and Syria."[102] It further accused Iran of remaining unwilling to bring

---

[99]    *Id*.
[100]   Press Release, U.S. Treasury Dep't, *Treasury Designates Iranian Ministry of Intelligence and Security for Human Rights Abuses and Support for Terrorism* (Feb. 16, 2012).
[101]   Press Release, U.S. Treasury Dep't, *Treasury Targets Networks Linked To Iran* (Feb. 6, 2014).
[102]   U.S. State Dep't, *Country Reports on Terrorism 2016* at Iran Section (July 2017).

to justice or identify al-Qaeda members in its custody.[103] The next year, the agency reaffirmed

those conclusions and reiterated Iran's close relationship with al-Qaeda

143.    As alleged above, the mafia-style "syndicate" of which both the Taliban and al-

Qaeda formed a part made attacks by each group more lethal. Iran's mutually reinforcing support

for both the Taliban and al-Qaeda made both organizations more effective.

144.    By supporting al-Qaeda, Iran provided material support and resources for the

extrajudicial killings that injured Plaintiffs or members of their families. Al-Qaeda directly

participated in many of the Attacks that injured Plaintiffs or their family members. Moreover, al-

Qaeda was closely intertwined with the Taliban and associated terrorist groups acting in

Afghanistan, and al-Qaeda planned and authorized the Taliban attacks in which it did not directly

participate. Material support and resources provided to al-Qaeda thus flowed to the Taliban,

killing and causing injury to Plaintiffs or their family members.

## III.    IRAN-SPONSORED TERRORIST ORGANIZATIONS CARRIED OUT NUMEROUS TERRORIST ATTACKS WHICH INJURED PLAINTIFFS

### A.    February 27, 2007 Attempted Assassination of Dick Cheney

145.    Bagram Airfield-BAF, (also known as Bagram Air Field), was the largest U.S.

Military Base in Afghanistan during the War in Afghanistan.[104] Throughout the 20-year war, it

was a frequent target of bombings and other terrorist attacks by the Taliban.

146.    On February 27, 2007, Vice President Dick Cheney was in Afghanistan to meet

with American allies in the region, and stayed at Bagram Airfield.[105]

---

[103] *Id.*
[104] *Bagram: Last US and Nato forces leave key Afghanistan base*, BBC (July 2, 2021), https://www.bbc.com/news/world-asia-57692303
[105] *Cheney unhurt in blast outside Afghan base*, CNN (February 27, 2007), https://web.archive.org/web/20070301092232/http://www.cnn.com/2007/WORLD/asiapcf/0 2/27/cheney.afghanistan.ap/index.html

147.    At around 10 am local time, a suicide bomber detonated at the base's outermost gate, killing 23 people and injuring another 20.[106]

148.    The Taliban took responsibility for the attack and claimed that the attack was intended to target the Vice President.[107]

149.    This attack constituted an extrajudicial killing.

## B.  March 15, 2010 Rocket Attack on Bagram Airfield

150.    On March 15, 2010, Taliban forces fired a rocket at Bagram Airfield, killing one person at the base.[108]

151.    The Taliban took responsibility for this attack.[109]

152.    This attack constituted an extrajudicial killing.

## C.  May 19, 2010 Assault on Bagram Airfield

153.    On May 19, 2010, Taliban attempted to penetrate the perimeter of Bagram Airfield with a combination of mortar fire, small arms, rocket-propelled grenades, and soldiers equipped with suicide bomb vests.[110] [111]

154.    One US contractor was killed, and nine soldiers were wounded in this attack.[112] The Taliban claimed responsibility.[113]

---

[106]   *Id.*
[107]   *Id.*
[108]   *Rocket attack kills 1 at NATO base in Afghanistan*, San Diego Union-Tribune (March 15, 2010), https://www.sandiegouniontribune.com/2010/03/15/rocket-attack-kills-1-at-nato-base-in-afghanistan/
[109]   *Id.*
[110]   *Sergeant recalls May 19 attack at Bagram*, U.S. Air Force (July 9, 2010), https://www.sheppard.af.mil/News/Features/Display/Article/370123/sergeant-recalls-may-19-attack-at-bagram/
[111]   *US troops repel complex Taliban assault on Bagram Airfield*, FDD's Long War Journal (May 19, 2010), https://www.longwarjournal.org/archives/2010/05/us_troops_repel_comp.php
[112]   *Id.*
[113]   *Id.*

155.    This attack constituted an extrajudicial killing.

**D.  October 29, 2011 Bombing of an Armored Car**

156.    On October 29, 2011, a Coalition vehicle convoy was transporting United States Military personnel and supporting contractors between facilities in Kabul City, Afghanistan.

157.    While the convoy was en route, at approximately 11:25 am local time, an assailant drove a car containing 1,500 pounds of explosives[114] into the side of the Rhino and exploded, killing 17 people: five soldiers, eight civilian contractors, and four bystanders.[115]

158.    The Taliban took credit for this attack.[116]

159.    This attack constituted an extrajudicial killing.

**E.  June 1, 2012 Assault on Forward Operating Base Salerno**

160.    Forward Operating Base ("FOB") Salerno was a military base in the Afghanistan province of Khost, near the Pakistan border. FOB Salerno was used by the United States from 2002 to 2013.

161.    On June 1, 2012, insurgents assaulted the base with a truck bomb estimated to be carrying 1,500 pounds of explosives.[117] The blast destroyed the dining hall on the base, killed two Americans, and injured dozens more.

---

[114] *U.S. Service Members Killed in Afghan Suicide Bomb Attack*, ABC News (October 29, 2011), https://abcnews.go.com/International/13-american-troops-killed-suicide-bomb-attack-kabul/story?id=14841459

[115] *Afghanistan: Suicide attack kills 13 foreign personnel*, BBC (October 29, 2011), https://www.bbc.com/news/world-south-asia-15504922

[116] *Id.*

[117] *Attack on U.S. outpost in Afghanistan worse than originally reported*, Washington Post (June 16, 2012), https://www.washingtonpost.com/world/national-security/attack-on-us-outpost-in-afghanistan-worse-than-originally-reported/2012/06/16/gJQAIyaihV_story.html

162.     The assailants then entered the base through the gap in the wall left by the explosion, and small arms combat commenced with the defenders.[118] Multiple civilians died in the fighting, and ultimately over 100 U.S. troops were injured during the attack.[119]

163.     While the Taliban claimed responsibility for this attack and publicly released footage recorded during the assault, the U.S. government believed that the attack was executed by the Haqqani Network itself.[120] [121]

164.     This attack constituted an extrajudicial killing.

**F.   August 7, 2012 Assault on Forward Operating Base Shank**

165.     FOB Shank was a military base in the Afghanistan province of Logar. FOB Shank was used by the United States from 2008 to 2021.

166.     On August 7, 2012, a truck stolen from a local contractor authorized to work on the base approached FOB Shank, equipped with an explosive device and 3,000 pounds of explosives.[122] [123]

167.     The truck passed through an initial outer checkpoint manned by Afghan security forces without incident and only detonated at a second checkpoint at the perimeter of the base, which was staffed by U.S. forces.[124]

---

[118] *New details emerge about complex attack on FOB Salerno*, FDD's Long War Journal (June 10, 2010), https://www.longwarjournal.org/archives/2012/06/new_details_emerge_a.php

[119] *Attack on U.S. outpost in Afghanistan worse than originally reported, supra.*

[120] *Id.*

[121] *Massive Suicide Attack at FOB Salerno*, Military.com (June 24, 2012), https://www.military.com/video/operations-and-strategy/afghanistan-conflict/massive-suicide-attack-at-fob-salerno/1752044616001

[122] *Truck bomb injures U.S. soldiers at Afghan base*, CBS News (August 7, 2012), https://www.cbsnews.com/news/truck-bomb-injures-us-soldiers-at-afghan-base/

[123] *A purple heart for 'mama bear'*, The Covington News (November 29, 2014), https://www.covnews.com/a-veterans-story/a-purple-heart-for-mama-bear/

[124] *Id.*

168.    This bombing killed four people and wounded 28.[125]

169.    This attack constituted an extrajudicial killing.

### G. September 14, 2012 Assault on Camp Bastion

170.    Camp Bastion is a military based in Helmand Province, Afghanistan which was a hub for the ISAF from 2005 to October 2014.

171.    On September 14, 2012, Taliban militants launched an assault on Camp Bastion with small arms and mortar or rocket fire.[126]

172.    This attack killed two American soldiers and wounded nine others.[127]

173.    This attack constituted an extrajudicial killing.

### H. August 28, 2013 Assault in Ghazni

174.    On August 28, 2013, Taliban insurgents attacked a Provincial Reconstruction Team in the Afghanistan city of Ghazni.[128]

175.    Two suicide bombers detonated outside of the main gate, and fighters entered through the breached wall before seizing a building within the compound and assaulting soldiers and civilians.[129]

176.    This attack killed at least eight people and wounded 57 more.[130]

---

[125] U.S. State Dep't, *Country Reports on Terrorism 2012* at 154 (May 2013).
[126] *Taliban take credit for British base attack*, Al Jazeera (September 15, 2014) https://www.aljazeera.com/news/2012/9/15/taliban-take-credit-for-british-base-attack
[127] *Suicide raid signals birth of Taliban SAS*, The Sunday Times (September 23, 2012), https://www.thetimes.com/comment/register/article/suicide-raid-signals-birth-of-taliban-sas-bjrplm1mzhd
[128] *Taliban launch suicide assault on ISAF PRT in Ghazni*, FDD's Long War Journal (August 28, 2013), https://www.longwarjournal.org/archives/2013/08/taliban_launch_suici_3.php
[129] *Id.*
[130] *Militants in Afghanistan kill at least 12*, CNN (August 28, 2013), https://www.cnn.com/2013/08/28/world/asia/afghanistan-suicide-attack/.

177.   The Taliban claimed responsibility for this attack.[131]

178.   This attack constituted an extrajudicial killing.

### I.   December 8, 2014 Rocket Attack on Bagram Airfield

179.   On Monday, December 8, 2014, the Taliban bombarded Bagram Airfield with rockets.[132]

180.   This attack killed two Afghan civilians working at the Airfield.[133]

181.   The Taliban claimed responsibility for this attack.[134]

182.   This attack constituted an extrajudicial killing.

### J.   December 8, 2015 Siege of Kandahar Airfield

183.   Kandahar International Airport (also known as Kandahar Airfield) is the largest airport in Afghanistan. During the War in Afghanistan, the airport was a principle base of operations for coalition forces.

184.   On December 8, 2015, eleven Taliban militants assaulted Kandahar Airfield (a.k.a. Kandahar International Airport), in Kandahar, Afghanistan. Suicide bombers overcame the security perimeter at the airport compound at approximately 6:30 pm local time,[135] and militants with machine guns entered buildings on the premises in a civilian section of the grounds.[136]  Hostages were taken, and Afghan security forces engaged with the attackers.[137]

---

[131] *Id.*
[132] *2 Afghan workers dead in Bagram rocket strike*, Pajhwok Afghan News (December 8, 2014), https://pajhwok.com/2014/12/08/2-afghan-workers-dead-bagram-rocket-strike/
[133] *Id.*
[134] *Id.*
[135] *Taliban attack on Kandahar airport leaves dozens dead*, The Guardian (December 9, 2015),
[136] *Kandahar airport death toll jumps to 50 after Taliban attack*, BBC News (December 10, 2015), https://www.bbc.com/news/world-asia-35058964
[137] *Id.*

185.    The resulting combat ultimately lasted for 26-hours before the Afghan military regained control.[138]  At least fifty people were killed, including 38 civilians, 10 soldiers, and 2 policemen. The Taliban took responsibility for the attack. [139]

186.    This attack constituted an extrajudicial killing and a hostage taking.

### K.  November 12, 2016 Bagram Airfield Bombing

187.    "On November 12, an Afghan employee at Bagram Airfield detonated a suicide vest inside the base at the behest of the Taliban, killing three U.S. soldiers, two U.S. contractors and wounding 14 people (13 U.S. citizens and one Polish national)." [140] This attack was perpetrated by a local worker hired by a contractor to work at the vehicle yard. [141]  The bomber was apparently interrupted before he was able to reach his perceived target, a sports ground where over 100 individuals were exercising.[142] The Taliban claimed responsibility for the attack.[143] [144]

188.    This attack constituted an extrajudicial killing.

### L.  May 8, 2019 Attack on Counterpart International

189.    "On May 8, the Taliban attacked USAID-funded, U.S.-based aid organization Counterpart International in Kabul, killing four civilians and a policeman, and wounding 24

---

[138] *Id.*

[139] *50 killed in attack at Afghanistan's Kandahar airport*, CNN (December 10, 2015), https://edition.cnn.com/2015/12/09/middleeast/afghanistan-airport-attack/

[140] U.S. State Dep't, *Country Reports on Terrorism 2016* at 238 (Jul. 2017).

[141] *Report: Lax security allowed suicide bomber to kill 5 on Bagram Airfield*, Army Times (December 13, 2017), https://www.armytimes.com/flashpoints/2017/12/13/report-lax-security-allowed-suicide-bomber-to-kill-5-on-bagram-airfield/.

[142] *Afghanistan: 4 Americans dead in blast at Bagram Airfield*, CNN (November 12, 2016), https://www.cnn.com/2016/11/11/asia/afghanistan-bagram-blast/

[143] *Id.*

[144] *Bomber Kills 4 Americans at U.S. Base in Afghanistan*, The New York Times (November 12, 2016), https://www.nytimes.com/2016/11/13/world/asia/bagram-air-base-afghanistan-suicide-bombing.html.

others."[145] Three employees of the American charity CARE were also killed.[146] This attack was a combination VBIED and shooting attack on an office building in central Kabul, and the explosive was strong enough to blow windows out of the building at least eight stories up.[147] The Taliban claimed responsibility for the attack.[148] [149] [150]

190.    This attack constituted an extrajudicial killing.

### M. December 11, 2019 Bagram Airfield Bombing

191.    On December 11, 2019, Taliban militants detonated a large vehicle-based improvised explosive device outside of Bagram Air Base, breaching the perimeter wall and an under-construction medical facility inside.[151] Coalition forces responded immediately, and U.S.

---

[145] U.S. State Dep't, *Country Reports on Terrorism 2019* at 152 (2020).

[146] *Taliban Attack Aid Group Office in Kabul, in Setback to U.S. Peace Talks*, The New York Times (May 8, 2019), https://www.nytimes.com/2019/05/08/world/asia/kabul-afghanistan-bombing.html.

[147] *Taliban car bomb strikes US-funded Counterpart International in central Kabul*, The National (May 8, 2019), https://www.thenationalnews.com/world/asia/taliban-car-bomb-strikes-us-funded-counterpart-international-in-central-kabul-1.858772

[148] *Id*.

[149] *Five killed in attack on charitable group in Afghanistan*, CNN (May 8, 2019), https://www.cnn.com/2019/05/08/asia/afghanistan-kabul-attack-counterpart-international-intl.

[150] *Afghanistan: Taliban attacks Counterpart International in Kabul*, Al Jazeera (May 8, 2019), https://www.aljazeera.com/news/2019/5/8/afghanistan-taliban-attacks-counterpart-international-in-kabul.

[151] *Taliban Attack U.S. Base in Afghanistan as Negotiators Talk Peace*, The New York Times (December 11, 2019), https://www.nytimes.com/2019/12/11/world/asia/Afghanistan-bagram-airfield-attack.html.

fighter craft bombed the area.[152] Two civilians were killed and more than 70 were wounded.[153]
[154] The Taliban claimed responsibility for the attack.[155] [156]

      192.    This attack constituted an extrajudicial killing.

## PLAINTIFFS

**Bruce Haskin**

      193.    Plaintiff Bruce Haskin is a citizen of the United States of America and served as a member of the U.S. Military. On December 11, 2019, Senior Master Sergeant Haskin suffered a traumatic head injury and severe tinnitus during a Taliban suicide attack at Bagram Air Base committed by the Taliban in Parwan Province, Afghanistan. As a result of severe emotional distress, SMSgt. Haskin was also diagnosed with PTSD. The attack constituted an extrajudicial killing.

**Ademir Begic**

      194.    Plaintiff Ademir Begic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an operations and maintenance manager. On November 12, 2016, and December 11, 2019, Mr. Begic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr.

---

[152] *Scores wounded in attack near U.S. Bagram Air Base in Afghanistan*, CBS News (December 11, 2019), https://www.cbsnews.com/news/bagram-air-base-afghanistan-taliban-suicide-bombing-attack-death-toll-medical-facility-2019-12-11/

[153] *Id*.

[154] U.S. State Dep't, *Country Reports on Terrorism 2019* at 152 (2020).

[155] Scores wounded in attack near U.S. Bagram Air Base in Afghanistan, supra.

[156] *At least two killed in Taliban suicide attack near US base*, Al Jazeera (December 11, 2019), https://www.aljazeera.com/news/2019/12/11/at-least-two-killed-in-taliban-suicide-attack-near-us-base/.

Begic was diagnosed with PTSD. Ademir Begic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Adis Tokic**

195.    Plaintiff Adis Tokic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an air operations coordinator. On March 15, 2010, May 19, 2010, and November 12, 2016, Mr. Tokic was psychologically injured in several attacks by the Taliban as well as a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Tokic was diagnosed with PTSD. Adis Tokic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Adnan Hrustemovic**

196.    Plaintiff Adnan Hrustemovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a billeting specialist. On December 11, 2019, Mr. Hrustemovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Hrustemovic was diagnosed with PTSD. Adnan Hrustemovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Adnan Omerdic**

197.    Plaintiff Adnan Omerdic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver. On December 11, 2019, Mr. Omerdic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan.

As a result of severe emotional distress, Mr. Omerdic was diagnosed with PTSD. Adnan Omerdic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Albion Ajeti**

198.    Plaintiff Albion Ajeti served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a laborer. On November 12, 2016, and December 11, 2019, Mr. Ajeti was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Ajeti was diagnosed with PTSD. Albion Ajeti is a citizen of the Republic of Kosovo. These attacks constituted extrajudicial killings.

**Alen Osmic**

199.    Plaintiff Alen Osmic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a plumber. On December 11, 2019, Mr. Osmic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attacks, Mr. Osmic suffered severe emotional distress. Alen Osmic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Alexander John Marks**

200.    Plaintiff Alexander John Marks served in Afghanistan as a civilian contractor working for EXP Federal Inc, a contractor for the U.S. government in Afghanistan as an electrician. On December 11, 2019, Mr. Marks was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Marks was diagnosed with PTSD.

Alexander John Marks is a citizen of the United Kingdom. The attack constituted an extrajudicial killing.

**Alis Hamustafic**

201.    Plaintiff Alis Hamustafic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan food preparation specialist. On December 11, 2019, Mr. Hamustafic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Hamustafic was diagnosed with PTSD. Alis Hamustafic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Almir Brkovic**

202.    Plaintiff Almir Brkovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Mr. Brkovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Brkovic was diagnosed with PTSD. Almir Brkovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Almir Husic**

203.    Plaintiff Almir Husic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a laborer. On December 11, 2019, Mr. Husic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a

result of severe emotional distress, Mr. Husic was diagnosed with PTSD. Almir Husic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Almir Mehic**

204.    Plaintiff Almir Mehic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a carpenter. On December 11th, 2019, and November 12th, 2016, Mr. Mehic was physically and psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. These attacks constituted extrajudicial killings. During both attacks he was thrown to the ground and battered. He suffered disorientation, temporary loss of hearing and nausea. As a result of his physical injuries and severe emotional distress, Mr. Mehic was diagnosed with PTSD.

**Amar Singh**

205.    Plaintiff Amar Singh served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a linguist specialist. On December 11, 2019, Mr. Singh was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Singh was diagnosed with PTSD. Amar Singh is a citizen of the United States. The attack constituted an extrajudicial killing.

**Amir Dulic**

206.    Plaintiff Amir Dulic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan air operations specialist. On November 12, 2016, and December 11, 2019, Mr. Dulic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Dulic was diagnosed with

PTSD. Amir Dulic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Amir Kurtic**

207.    Plaintiff Amir Kurtic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a food service admin specialist. On December 11, 2019, Mr. Kurtic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Kurtic was diagnosed with PTSD. Amir Kurtic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Amir Tabukcic**

208.    Plaintiff Amir Tabukcic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a fuel operator. On December 11, 2019, Mr. Tabukcic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Tabukcic was diagnosed with PTSD. Amir Tabukcic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Andrae Rashaun Patrick**

209.    Plaintiff Andrae Rashaun Patrick, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for DynCorp International, a contractor for the U.S. government in Afghanistan, as a warehouse specialist. On December 11th, 2019, Mr. Patrick was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an

extrajudicial killing. As a result of severe emotional distress, Mr. Patrick was diagnosed with PTSD.

**Andre Pitter**

210.    Plaintiff Andre Pitter served in Afghanistan as a civilian contractor working for General Dynamics Information Technology, a contractor for the U.S. government in Afghanistan. On December 11, 2019, Mr. Pitter was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Pitter was diagnosed with PTSD. Andre Pitter is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Anthony Branch**

211.    Plaintiff Anthony Branch served in Afghanistan as a civilian contractor working for the Lockheed Martin corporation, a contractor for the U.S. government in Afghanistan as a mechanical engineer. On December 11, 2019, Mr. Branch was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Branch was diagnosed with PTSD. Anthony Branch is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Anthony Hingleton**

212.    Plaintiff Anthony Hingleton served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a senior transportation manager. On November 12, 2016, and December 11, 2019, Mr. Hingleton was psychologically injured in a suicide bombing and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack suffered

severe emotional distress. Anthony Hingleton is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Arben Nuredini**

213.    Plaintiff Arben Nuredini served in Afghanistan as a civilian contractor working for the DynoCorp corporation, a contractor for the U.S. government in Afghanistan as a cargo document specialist. On December 8, 2015, Mr. Nuredini was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Kandahar International Airport, also known as Ahmad Shah Baba International Airport, in the Daman District of Kandahar Province, Afghanistan. As a result of severe emotional distress, Mr. Nuredini was diagnosed with PTSD. Arben Nuredini is a citizen of Kosovo. The attack constituted an extrajudicial killing.

**Asmir Omic**

214.    Plaintiff Asmir Omic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a power generation journeyman. On December 11, 2019, Mr. Omici was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Omic was diagnosed with PTSD. Asmir Omic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Belmir Hadziribic**

215.    Plaintiff Belmir Hadziribic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver. On December 11, 2019, Mr. Hadziribic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan.

As a result of severe emotional distress, Mr. Hadziribic was diagnosed with PTSD. Belmir

Hadziribic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Benjamin Hamustafic**

216.    Plaintiff Benjamin Hamustafic served in Afghanistan as a civilian contractor

working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a

plumber. On December 11, 2019. Mr. Hamustafic was psychologically injured in a suicide

bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Mr. Hamustafic was diagnosed

with PTSD. Benjamin Hamustafic is a citizen of Bosnia and Herzegovina. The attack constituted

an extrajudicial killing.

**Borche Nikolovski**

217.    Plaintiff Borche Nikolovski served in Afghanistan as a civilian contractor

working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a

senior food service specialist. On May 19, 2010, and November 12, 2016, Mr. Nikolovski was

psychologically injured in terrorist attacks and a suicide bombing committed by the Taliban at

Bagram Air Base in Parwan Province, Afghanistan. Additionally, on June 1, 2012, Mr.

Nikolovski as psychologically injured in a suicide bombing and follow on attack committed by

the Taliban at Forward Operating Base Salerno in Khost Province, Afghanistan. As a result of

severe emotional distress, Mr. Nikolovski was diagnosed with PTSD. Borche Nikolovski is a

citizen of North Macedonia. These attacks constituted extrajudicial killings.

**Boris Bilandzija**

218.    Plaintiff Boris Bilandzija served in Afghanistan as a civilian contractor working

for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an LMR

specialist. On May 19, 2010, November 12, 2016, and December 11, 2019, Mr. Bilandzija was

psychologically injured in terrorist attacks and suicide bombings committed by the Taliban at
Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr.
Bilandzija was diagnosed with PTSD. Boris Bilandzija is a citizen of Bosnia and Herzegovina.
These attacks constituted extrajudicial killings.

**Brandon Rashad Brown**

219.    Plaintiff Brandon Rashad Brown, a citizen of the United States of America,
served in Afghanistan as a civilian contractor working for Science Applications International
Corporation (SAIC), a contractor for the U.S. government in Afghanistan, as a systems
administrator. On November 12th, 2016, Mr. Brown was physically and psychologically injured
in an attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. His
ear drums were damaged and the force of the blast threw him into the wall of a bunker, injuring
his ribs and neck. Mr. Brown was also psychologically injured in a previous attack committed by
the Taliban at Camp Bastion in Helmand Province, Afghanistan on September 14th, 2012. Both
attacks constituted extrajudicial killings. As a result of physical battery and extreme emotional
distress, Mr. Brown was diagnosed with PTSD.

**Brian George Shirley**

220.    Brian George Shirley, a citizen of the United States of America, served in
Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the
U.S. government in Afghanistan, as a fuel lab technician. On December 11th, 2019, Mr. Shirley
was psychologically injured in a suicide bombing and subsequent attack committed by the
Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an
extrajudicial killing. As a result of severe emotional distress, Mr. Shirley was diagnosed with
PTSD.

**Brian Patrick Jimmerson**

221.    Plaintiff Brian Patrick Jimmerson, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for Comtech Mission Critical Technologies (MCT), a contractor for the U.S. government in Afghanistan, as a regional control manager. On December 11th, 2019, November 12th, 2016, March 15th, 2010, and May 19th, 2010, Mr. Jimmerson was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. These attacks constituted extrajudicial killings. During the December 11th, 2019, attack, Mr. Jimmerson was also physically injured when he was knocked down by the force of the blast and struck by falling objects. As a result of his physical injuries and severe emotional distress, Mr. Jimmerson was diagnosed with PTSD.

**Carey Earl Johnson Jr.**

222.    Plaintiff Carey Earl Johnson Jr. served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a movement control manager. On December 11, 2019, Mr. Johnson Jr. was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Johnson Jr. was diagnosed with PTSD. Carey Earl Johnson Jr. is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Charles Taylor**

223.    Plaintiff Charles Taylor, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for DynCorp International, a contractor for the U.S. government in Afghanistan, as a supply technician. On May 8th, 2019, Mr. Taylor was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at the USAID funded, aid organization, Counterpoint International, in Kabul Province,

Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Taylor was diagnosed with PTSD.

**Charlie Hall, III**

224.    Plaintiff Charlie Hall, III, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a liquid fuel mechanic. On December 11th, 2019, Mr. Hall was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Hall was diagnosed with PTSD.

**Chauncey Marshall David Williams**

225.    Plaintiff Chauncey Marshall David Williams served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a Department of Defense contractor. On November 16, 2016, he was physically injured suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of  severe emotional distress from both attacks, Mr. Williams was diagnosed with PTSD. Chauncey Marshall David Williams is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Claus Keys**

226.    Plaintiff Claus Keys served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a country movement control manager. On November 12, 2016, and December 11, 2019, Mr. Keys was psychologically injured in a suicide bombing and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack suffered severe

emotional distress. Claus Keys is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Clifton Jemel Waiters**

227.    Plaintiff Clifton Jemel Waiters, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for Ardent Eagle Solutions, a contractor for the U.S. government in Afghanistan, as a field service representative. On December 11th, 2019, Mr. Waiters was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. The force of the shockwave blew discharge from his nose and caused tinnitus for several days. As a result of physical battery and severe emotional distress, Mr. Waiters was diagnosed with PTSD.

**Corey Huguley**

228.    Plaintiff Corey Huguley served in Afghanistan as a civilian contractor working for Honeywell and Northrop Grumman Technical Services, contractors for the U.S. government in Afghanistan as a process coordinator inspector and as a material handler. On November 12, 2016, and December 11, 2019, Mr. Huguley was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Mr. Huguley was physically injured and suffered emotional distress, which resulted in PTSD due to a Taliban attack. Corey Huguley is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Damir Omerbegovic**

229.    Plaintiff Damir Omerbegovic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a construction coordinator. On December 11th, 2019, Mr.

Omerbegovic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Omerbegovic was diagnosed with PTSD.

**Damita Palmer**

230.    Plaintiff Damita Palmer served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a human resources coordinator. On May 19, 2010 and November 12, 2016, Ms. Palmer was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms.Palmer was diagnosed with PTSD. Damita Palmer is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Daniel Keith Singletary**

231.    Plaintiff Daniel Keith Singletary, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a fuels technician. On December 11th, 2019, Mr. Singletary was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Singletary was diagnosed with PTSD.

**Daniel Stanojkovski**

232.    Plaintiff Daniel Stanojkovski, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as general labor foreman and supervisor. On November

12th, 2016, and December 11ᵗʰ, 2019, Mr. Stanojkovski was physically and psychologically injured in suicide bombings committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. These attacks constituted extrajudicial killings.  During the November 12ᵗʰ, 2016, attack he was thrown against a wall by the impact of the blast and suffered temporary loss of consciousness and disorientation. He also witnessed the body parts and blood of victims and was held up at gunpoint by soldiers demanding his identification. During the December 11ᵗʰ, 2019 attack he was thrown to the ground, hitting his head and suffering temporary loss of hearing. He acted as a first responder, searching for colleagues. As a result of physical battery and severe emotional distress, Mr. Stanojkovski was diagnosed with PTSD.

**Danijel Mrkonjic**

233.    Plaintiff Danijel Mrkonjic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan food service worker. On December 11, 2019, Mr. Mrkonjic was physically injured and psychologically injured from a suicide bombing and follow on attack at Bagram Air Base committed by the Taliban in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Mrkonjic was diagnosed with PTSD. Danijel Mrkonjic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Darin Davis Sr.**

234.    Plaintiff Darin Davis Sr. served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a crane operator. On November 12, 2016 and December 11, 2019, Mr. Davis was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Davis was

diagnosed with PTSD. Darin Davis Sr. is a citizen of the United States. These attacks constituted extrajudicial killings.

**Darmin Cejvan**

235.     Plaintiff Darmin Cejvan, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for Fluor Federal Global Projects, Inc., a contractor for the U.S. government in Afghanistan. On August 7th, 2012, Mr. Cejvan was physically and psychologically injured in an attack committed by the Taliban at Forward Operating Base Shank in Logar Province, Afghanistan. He was walking through the kitchen and was thrown to the ground and struck by a large shelf that had fallen. He later saw body parts while cleaning up debris from the attack. Mr. Cejvan was psychologically injured in another attack committed by the Taliban at Bagram Air Base on November 12th, 2016. Both attacks constituted extrajudicial killings. As a result of his physical injuries and severe emotional distress, Mr. Cejvan was diagnosed with PTSD. These attacks constituted extrajudicial killings.

**Darren Williams**

236.     Plaintiff Darren Williams served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a trucker driver. On March 15, 2010, May 19, 2010, November 12, 2016, and December 11, 2019, Mr. Williams was psychologically injured in repeated attacks including a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attacks, Mr. Williams experienced severe emotional distress. Darren Williams is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Dejan Mrkonjic**

237.     Plaintiff Dejan Mrkonjic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver.

On December 11, 2019, Mr. Mrkonjic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Mrkonjic was diagnosed with PTSD. Dejan Mrkonjic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Dejan Popovic**

238.    Plaintiff Dejan Popovic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Carpenter Journeyman. On December 11th, 2019, Mr. Popovic was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. He suffered disorientation and lasting tinnitus from the shockwave of the blast, for which he has received medical treatment. The attack constituted an extrajudicial killing.  As a result of physical injury and severe emotional distress, Mr. Popovic was diagnosed with PTSD.

Dharminder **Banga**

239.    Plaintiff Dharminder Banga served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an appliance repair technician. On December 11, 2019, Mr. Banga was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Banga was diagnosed with PTSD. Dharminder Banga is a citizen of India. The attack constituted an extrajudicial killing.

**Dino Ahmetovic**

240.    Plaintiff Dino Ahmetovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a billeting specialist. On December 11, 2019, Mr. Ahmetovic was psychologically injured in a suicide

bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Mr. Ahmetovic was diagnosed

with PTSD. Dino Ahmetovic is a citizen of Bosnia and Herzegovina. The attack constituted an

extrajudicial killing.

**Dino Pasalic**

241.    Plaintiff Dino Pasalic, a citizen of Bosnia and Herzegovina, served in Afghanistan

as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government

in Afghanistan, as a Movement Control Technician. On December 11th, 2019, Mr. Pasalic was

physically and psychologically injured in a suicide bombing and subsequent attack committed by

the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an

extrajudicial killing. Mr. Pasalic was thrown from his bed by the impact of the blast and feared

for his life. As a result of physical battery and severe emotional distress, Mr. Pasalic was

diagnosed with PTSD.

**Dorothy Lewis**

242.    Plaintiff Dorothy Lewis served in Afghanistan as a civilian contractor working for

Fluor, a contractor for the U.S. government in Afghanistan as an administrative liaison. On

December 11, 2019, Ms. Lewis was physically injured in a suicide bombing and follow on attack

committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of

severe emotional distress, Ms. Lewis was diagnosed with PTSD. Dorothy Lewis is a citizen of

the United States of America. The attack constituted an extrajudicial killing.

**Dzeraldina Zigic**

243.    Plaintiff Dzeraldina Zigic served in Afghanistan as a civilian contractor working

for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a food server

specialist. On May 19, 2010, and November 12, 2016, Ms. Zigic was psychologically injured in

terrorist attacks and a suicide bombing committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Ms. Zigic was diagnosed with

PTSD. Dzeraldina Zigic is a citizen of Bosnia and Herzegovina. These attacks constituted

extrajudicial killings.

**Edib Muhovic**

244.    Plaintiff Edib Muhovic served in Afghanistan as a civilian contractor working for

the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a laborer. On

December 11, 2019. Mr. Muhovic was psychologically injured in a suicide bombing and follow

on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a

result of severe emotional distress, Mr. Muhovic was diagnosed with PTSD**.** Edib Muhovic is a

citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Edin Kasumovic**

245.    Plaintiff Edin Kasumovic, a citizen of Bosnia and Herzegovina, served in

Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S.

government in Afghanistan, as an HVAC superintendent. On December 11th, 2019, and

November 12th, 2016, Mr. Kasumovic was physically and psychologically injured in attacks

committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. In the

December 11th, 2019, attack he was thrown from his bed and covered furniture, household items

and debris. In the November 12th, 2016, attack he was thrown to the ground. Mr. Kasumovic was

also psychologically injured in an attack committed by the Taliban at Bagram Air Base on

December 8th, 2014. These attacks constituted extrajudicial killings. As a result of physical

battery and severe emotional distress, Mr. Kasumovic was diagnosed with PTSD.

**Edin Salihovic**

246.    Plaintiff Edin Salihovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an appliance repairman. On December 11, 2019, Mr. Salihovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Salihovic was diagnosed with PTSD. Edin Salihovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Edis Bajrektarevic**

247.    Plaintiff Edis Bajrektarevic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a food service worker. On May 19, 2010 and December 11, 2019, Mr. Bajrektarevic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Bajrektarevic was diagnosed with PTSD. Edis Bajrektarevic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Elijuwon Brandt Hale**

248.    Plaintiff Elijuwon Brandt Hale, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as an equipment operator. On December 11th, 2019, Mr. Brandt was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Brandt was diagnosed with PTSD.

68

**Elvana Bregu**

249.    Plaintiff Elvana Bregu, a citizen of Albania, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a logistics coordinator. On December 11th, 2019, November 12, 2016, and December 8th, 2014, Ms. Bregu was physically and psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attacks constituted extrajudicial killings. During the December 8th, 2014, attack Ms. Bregu suffered disorientation and hearing loss. Her colleague was killed. During the November 12th, 2016, attack and the December 11th, 2019, attack Ms. Bregu was knocked to the ground. She received treatment at the Fluor clinic for panic disorder and dust inhalation after the December 11th, 2019, attack. As a result of her physical injuries and severe emotional distress, Ms. Bregu was diagnosed with PTSD.

**Elvedin Trakic**

250.    Plaintiff Elvedin Trakic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a heavy truck driver. On December 11, 2019, Mr. Trakic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Trakic was diagnosed with PTSD. Elvedin Trakic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Elvira Okic**

251.    Plaintiff Elvira Okic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a material control specialist. On May 19, 2010, November 12, 2016, and December 11, 2019, Ms. Okic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at

Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Okic was diagnosed with PTSD. Elvira Okic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Emir Kamaric**

252.    Plaintiff Emir Kamaric served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an administrator. On November 12, 2016, and December 11, 2019, Mr. Kamaric was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Kamaric was diagnosed with PTSD. Emir Kamaric is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Emir Salkovic**

253.    Plaintiff Emir Salkovic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a fuel operator. On December 11, 2019, Mr. Salkovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Salkovic was diagnosed with PTSD. Emir Salkovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Eraka Russell**

254.    Plaintiff Eraka Russell served in Afghanistan as a civilian contractor working for CACI, a contractor for the U.S. government in Afghanistan as a senior program analyst. On December 11, 2019, Ms. Russell was psychologically injured in a suicide bombing and follow attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a

result of severe emotional distress, Ms. Russell was diagnosed with PTSD. Eraka Russell is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Fernando Colazo Lopez**

255.    Plaintiff Fernando Colazo Lopez, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a maintenance and fuels technician. On December 11th, 2019, Mr. Lopez was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Lopez was diagnosed with PTSD.

**Fikret Basic**

256.    Plaintiff Fikret Basic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a HVAC repair technician. On December 11th, 2019, and November 12, 2016, Mr. Basic was physically and psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. During the December 11th, 2019, attack Mr. Basic was buried in dust and debris in his bed. During the November 12th, 2016, attack, he was thrown to the ground and covered with stones, fearing for his life near crossfire. These attacks constituted extrajudicial killings. As a result of physical battery and severe emotional distress, Mr. Basic was diagnosed with PTSD.

**Flamur Dugolli**

257.    Plaintiff Flamur Dugolli served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Mr. Dugolli was psychologically injured in a

suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Dugolli was diagnosed with PTSD. Flamur Dugolli is a citizen of Kosovo. The attack constituted an extrajudicial killing.

**Frosina Stefanovska**

258.    Plaintiff Frosina Stefanovska, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for Fluor Federal Global Projects and Kellog, Brown and Root, contractors for the U.S. government in Afghanistan as a food service worker. On December 11th, 2019, and November 12th, 2016, Ms. Stefanovska was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. She was also physically injured in a prior attack committed by the Taliban at Bagram Air Base on March 15th, 2010. She was thrown from her bed during the attack and injured her back. All attacks constituted extrajudicial killings. As a result of her physical injury and severe emotional distress, Ms. Stefanovska was diagnosed with PTSD. These attacks constituted extrajudicial killings.

**Fuad Hankic**

259.    Plaintiff Fuad Hankic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an HVAC assistant. On December 11, 2019, Mr. Hankic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Hankic was diagnosed with PTSD. Fuad Hankic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**George Zhorzhikashvili**

260.    Plaintiff George Zhorzhikashvili served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a heavy truck driver.  On December 11, 2019, Mr. Zhorzhikashvili was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Zhorzhikashvili was diagnosed with PTSD. George Zhorzhikashvili is a citizen of Georgia. The attacks constituted an extrajudicial killing.

**Giorgi Mamaladze**

261.    Giorgi Mamaladze, a citizen of the Republic of Georgia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a heavy equipment foreman. On November 12th, 2016, December 11th, 2019, March 15th, 2010, and May 19th, 2010, Mr. Mamaladze was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. These attacks constituted extrajudicial killings. As a result of severe emotional distress, Mr. Mamaladze was diagnosed with PTSD.

**Goran Ligic**

262.    Plaintiff Goran Ligic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver. On December 11, 2019, Mr. Ligic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Ligic was diagnosed with PTSD. Goran Ligic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

73

**Greggory Montra Alexander**

263.    Plaintiff Greggory Montra Alexander, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a fuel truck driver and laboratory technician. On December 11th, 2019, November 11, 2016, and February 27th, 2007, Mr. Alexander was physically and psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attacks constituted extrajudicial killings. On December 11th, 2019, Mr. Alexander was knocked down by the force of the blast and pinned underneath a wall locker. As a result of his physical injuries and severe emotional distress, Mr. Alexander was diagnosed with PTSD.

**Haris Lelic**

264.    Plaintiff Haris Lelic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Mr. Lelic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Lelic was diagnosed with PTSD. Haris Lelic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Hasret Residovic**

265.    Plaintiff Hasret Residovic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a laborer. On December 11, 2019, Mr. Residovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Residovic was diagnosed with PTSD. Hasret Residovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Hugh Valentine Collins**

266.     Plaintiff Hugh Valentine Collins, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan. On December 11th, 2019, Mr. Collins was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. On August 7th, 2012, Mr. Collins was also psychologically injured in an attack committed by the Taliban at Forward Operating Base Shank in Logar Province, Afghanistan. These attacks constituted extrajudicial killings.  As a result of severe emotional distress, Mr. Collins was diagnosed with PTSD.

**Igor Curcic**

267.     Plaintiff Igor Curcic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an expediting supervisor. On October 29, 2011, a vehicle-borne IED attack was committed by the Taliban and Kabul Attack Network in Kabul, Afghanistan. Mr. Curcic was physically injured from the attack. On December 11, 2019, Mr. Curcic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress from both attacks, Mr. Curcic was diagnosed with PTSD. Igor Curcic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Isaac Houston**

268.     Plaintiff Isaac Houston, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for Force Protection Services, a contractor for the U.S. government in Afghanistan, as a Field Services Representative. On December 11th, 2019, Mr. Houston was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an

extrajudicial killing. As a result of severe emotional distress, Mr. Houston was diagnosed with PTSD.

**Ivana Krsevska Dodevska**

269.    Plaintiff Ivana Krsevska Dodevska, a citizen of North Macedonia, served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan as a food service worker. On March 15, 2010, May 19, 2010, and November 12, 2016, Ms. Dodevska was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Ms. Dodevska was also psychologically injured in an attack committed by the Taliban at Forward Operating Base Salerno in Khost Province, Afghanistan on June 1st, 2012. The attacks constituted extrajudicial killings. As a result of severe emotional distress, Ms. Dodevska was diagnosed with PTSD.

**Ivory Lamar Hope**

270.    Plaintiff Ivory Lamar Hope served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan. On December 11, 2019, Mr. Hope was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack suffered severe emotional distress. Ivory Lamar Hope is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Jadranko Piric**

271.    Plaintiff Jadranko Piric served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Mr. Piric was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Piric was diagnosed with PTSD.

Jadranko Piric is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**James Batson III**

272.    Plaintiff James Batson III served in Afghanistan as a civilian contractor working for Apex Expert Solutions, a contractor for the U.S. government in Afghanistan as a terrestrial sensor specialist. December 11, 2019, Mr. Batson III was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Mr. Cassidy Jr. was physically injured and suffered emotional distress, which resulted in PTSD due to a Taliban attack. Rodger Cassidy Jr. is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Jamie Barr**

273.    Plaintiff Jamie Barr served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan as an emergency operations supervisor. On June 1, 2012, and November 12, 2016, and December 11, 2019, Mr. Barr was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Forward Operating Base Salerno in Khost Province, Afghanistan and Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack Mr. Barr has suffered severe emotional distress. Jamie Barr is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Jammar Sentell Singleton**

274.    Plaintiff Jammar Sentell Singleton served in Afghanistan as a civilian contractor working for DynCorp, a contractor for the U.S. government in Afghanistan as an aircraft mechanic. On November 12, 2016, and on December 11, 2019, Mr. Singleton was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at

Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Singleton was diagnosed with PTSD. Jammar Sentell Singleton is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Jasmin Okic**

275.    Plaintiff Jasmin Okic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a food service specialist. On December 11, 2019, Mr. Okic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Okic was diagnosed with PTSD. Jasmin Okic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Jasmin Piric**

276.    Plaintiff Jasmin Piric served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a labor foreman. On November 12, 2016, and December 11, 2019, Mr. Piric was physically injured during a Taliban suicide attack at Bagram Air Base committed by the Taliban in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Piric was diagnosed with PTSD. Jasmin Piric is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Jasminka Bekic**

277.    Plaintiff Jasminka Bekic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a food service specialist. On December 11, 2019, Ms. Bekic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province,

Afghanistan. As a result of severe emotional distress, Ms. Bekic was diagnosed with PTSD. Jasminka Bekic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Jelena Todorovikj**

278.    Plaintiff Jelena Todorovikj served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Ms. Todorovikj was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Todorovikj was diagnosed with PTSD. Jelena Todorovikj is a citizen of North Macedonia. The attack constituted an extrajudicial killing.

**Jeremy Steele**

279.    Plaintiff Jeremy Steele served in Afghanistan as a civilian contractor working for Northrop Grumman, a contractor for the U.S. government in Afghanistan as a supervisor. On December 11, 2019, Mr. Steele was psychologically injured in a suicide bombing and follow on attack committed by Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Steele was diagnosed with PTSD. Jeremey Steele is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Jonathan Lassiter**

280.    Plaintiff Jonathan Lassiter served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan. On November 12, 2016, and December 11, 2019, Mr. Lassiter was psychologically injured in a suicide bombing and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Lassiter was diagnosed with PTSD.

Jonathan Lassiter is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Jose R. Figueroa**

281.    Plaintiff Jose R. Figueroa served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan as a work control supervisor. On December 11, 2019, Mr. Figueroa was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Figueroa was diagnosed with PTSD. Jose R. Figueroa is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Joshua Aaron Robinson**

282.    Plaintiff Joshua Aaron Robinson, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a project information specialist. On December 11th, 2019, Mr. Robinson was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was thrown from his bed by the force of the attack. As a result of physical battery and severe emotional distress, Mr. Robinson was diagnosed with PTSD.

**Joshua Bernard Hicks**

283.    Plaintiff Joshua Bernad Hicks, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for DynCorp International, a contractor for the U.S. government in Afghanistan. On December 11th, 2019, Mr. Hicks was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in

Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Hicks was diagnosed with PTSD.

**Josip Marinovic**

284.    Plaintiff Josip Marinovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a fuel distribution system foreman. On December 11, 2019, Mr. Marinovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Marinovic was diagnosed with PTSD. Josip Marinovic is a citizen of the Republic of Croatia. The attack constituted an extrajudicial killing.

**Juan Jones**

285.    Plaintiff Juan Jones served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan director of materials management. On November 12, 2016 and December 11, 2019, Mr. Jones was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Jones was diagnosed with PTSD. Juan Jones is a citizen of the United States. These attacks constituted extrajudicial killings.

**Junior Caba**

286.    Plaintiff Junior Caba served in Afghanistan as a civilian contractor working for Raytheon, a contractor for the U.S. government in Afghanistan as a senior engineer logistics specialist. On November 12, 2016, and December 11, 2019, Mr. Caba was psychologically injured in a suicide bombing and follow on attack by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attacks, Mr. Caba suffered severe emotional distress.

Junior Caba is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**LaBaron Andrake Hicks**

287.    Plaintiff LaBaron Andrake Hicks, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a fuels technician.  On December 11th, 2019, Mr. Hicks was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of his severe emotional distress, Mr. Hicks was diagnosed with PTSD.

**Laith Neshwati**

288.    Plaintiff Laith Neshwati served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a billeting technician. Laith Neshwati is a citizen of Bosnia and Herzegovina. On December 11, 2019, Mr. Neshwati was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Neshwati was diagnosed with PTSD The attack constituted an extrajudicial killing.

**Lamont White**

289.    Plaintiff Lamont White, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for PAE Government Services, a contractor for the U.S. government in Afghanistan, as a vehicle mechanic. On December 11th, 2019, Mr. White was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an

extrajudicial killing. As a result of severe emotional distress, Mr. White was diagnosed with PTSD.

**Larisa Dekic**

290.    Plaintiff Larisa Dekic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an administrator. On December 11, 2019, Ms. Dekic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Dekic was diagnosed with PTSD. Larisa Dekic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Lela Mishikj**

291.    Plaintiff Lela Mishikj, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a water supply technician. On December 11th, 2019, Ms. Mishikj was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. The blast blew through the doors and part of the roof off the building she was sleeping in. As a result of severe emotional distress, Ms. Mishikj was diagnosed with PTSD.

**Leland Lujan**

292.    Plaintiff Leland Lujan served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan as a heavy truck driver. December 11, 2019, Mr. Leland was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Afghanistan Air Base and in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Leland was diagnosed with PTSD. Leland Lujan is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Lyndell Martin**

293.    Plaintiff Lyndell Martin, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan as a warehouse supervisor and expeditor. On December 11, 2019, and November 11th, 2016, Mr. Martin was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. On June 1, 2012, Mr. Martin was also physically and psychologically injured in an attack committed by the Taliban at Forward Operating Base Salerno in Khost Province, Afghanistan. He was thrown to the ground and injured his leg prompting surgery and a lengthy recovery. These attacks constituted extrajudicial killings. As a result of physical injury and severe emotional distress, Mr. Martin was diagnosed with PTSD.

**Magdalena Lipkovska**

294.    Plaintiff Magdalena Lipkovska, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a food service administrator. On November 12th, 2016, Ms. Lipkovska was psychologically injured in a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. She witnessed the bodies of injured and dead victims. Ms. Lipkovska was also physically and psychologically injured in an attack committed by the Taliban at Bagram Air Base on December 8th, 2014. She was knocked to the ground by the force of the blast and was surrounded by screaming and injured victims. On August 28th, 2013, Ms. Lipkovska was physically and psychologically injured in an attack committed by the Taliban at Forward Operating Base Ghazni, in Ghazni Province, Afghanistan. Her office was destroyed and a water pipe exploded. She was pinned to the ground by a colleague and feared being electrocuted. Later she witnessed gunfire outside the bunker where she was hiding, and a

Polish soldier pointed a gun at her. These attacks constituted extrajudicial killings. As a result of physical battery and severe emotional distress, Ms. Lipkovska was diagnosed with PTSD.

**Mahir Alic**

295.    Plaintiff Mahir Alic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a billeting specialist. On December 11, 2019, Mr. Alic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Alic was diagnosed with PTSD. Mahir Alic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Maida Ikanovic**

296.    Plaintiff Maida Ikanovic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a billeting specialist. On December 11, 2019, Ms. Ikanovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Ikanovic was diagnosed with PTSD. Maida Ikanovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Marcus Kuykendall**

297.    Plaintiff Marcus Kuykendall served in Afghanistan as a civilian contractor working for Fluor, a contractor for the U.S. government in Afghanistan as a materials control specialist. On December 11, 2019, Mr. Kuykendall was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Kuykendall was diagnosed

with PTSD. Marcus Kukykedall is a citizen of the United States of America. The attack

constituted an extrajudicial killing.

**Mark Anthony Davis**

298.    Plaintiff Mark Anthony Davis served in Afghanistan as a civilian contractor

working for Fluor corporation, a contractor for the U.S. government in Afghanistan as a security

technician. On November 12, 2016, and December 11, 2019, Mr. Davis was psychologically

injured in a suicide bombing and follow on attacks committed by the Taliban at Bagram Air Base

in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Davis was

diagnosed with PTSD. Mark Anthony Davis is a citizen of the United States of America. These

attacks constituted extrajudicial killings.

**Mark Waweru Mwaniki**

299.    Plaintiff Mark Waweru Mwaniki served in Afghanistan as a civilian contractor

working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a

billeting technician. On December 11, 2019, Mr. Mwaniki was psychologically injured in a

suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Mr. Mwaniki was diagnosed

with PTSD. Mark Waweru Mwaniki is a citizen of Kenya. The attack constituted an extrajudicial

killing.

**Marvin Randy Armstrong**

300.    Plaintiff Marvin Randy Armstrong served in Afghanistan as a civilian contractor

working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a

materiel control supervisor. On May 19, 2010, November 12, 2016, and December 11, 2019, Mr.

Armstrong was psychologically injured in terrorist attacks and suicide bombings committed by

the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack, Mr.

Armstrong experienced severe emotional distress. Marvin Randy Armstrong is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Matthew Dodd**

301.    Plaintiff Sergeant First Class Matthew Dodd is a citizen of the United States of America and served as a member of the U.S. Military. On December 11, 2019, Sergeant First Class Dodd suffered a traumatic head injury during a Taliban suicide bombing and follow attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, SFC Dodd was also diagnosed with PTSD. The attack constituted an extrajudicial killing.

**Merima Hodzic**

302.    Plaintiff Merima Hodzic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Material Control Specialist. On December 11th, 2019, Ms. Hodzic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Ms. Hodzic was also the victim of three prior attacks committed by the Taliban at Bagram Air Base in Parwan Province, on November 12th, 2016, March 15th, 2010, and May 19th, 2010. These attacks constituted extrajudicial killings.  As a result of severe emotional distress, Ms. Hodzic was diagnosed with PTSD.

**Michael Stone**

303.    Plaintiff Michael Stone in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as logistics manager. On May 19, 2010, and December 11, 2019, Mr. Stone was psychologically injured in terrorist attacks and a suicide bombing committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Mr. Stone was diagnosed with PTSD. Michael Stone is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Miki Petkovski**

304.    Plaintiff Miki Petkovski, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for Fluor Federal Global Projects, Inc., a contractor for the U.S. government in Afghanistan, as a maintenance and logistics technician. On December 11th, 2019, Mr. Petkovski was physically and psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was thrown to the ground and disorientated during the blast and later developed tinnitus and hearing loss in both ears. As a result of his physical injuries and severe emotional distress, Mr. Petkovski was diagnosed with PTSD.

**Mira Komazec-Sehic**

305.    Plaintiff Mira Komazec-Sehic, a citizen of Croatia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a food service worker, waste disposal laborer and foreman. On December 11th, 2019, November 12, 2016, and May 19th, 2010, Ms. Komazec-Sehic was psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. These attacks constituted extrajudicial killings. As a result of severe emotional distress, Ms. Komazec-Sehic was diagnosed with PTSD.

**Miralem Cipurkovic**

306.    Plaintiff Miralem Cipurkovic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver. On December 11, 2019, Mr. Cipurkovic was psychologically injured in a suicide

bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Cipurkovic was diagnosed with PTSD. Miralem Cipurkovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Miralem Denjagic**

307.    Plaintiff Miralem Denjagic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an air operations coordinator. On November 12, 2016 and December 11, 2019, Mr. Denjagic was psychologically injured in terrorist attacks and suicide bombings committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Denjagic was diagnosed with PTSD. Miralem Denjagic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Miranda Hetemi**

308.    Plaintiff Miranda Hetemi, a citizen of the Republic of Kosovo, served in Afghanistan as a civilian contractor working for Global Sourcing Solutions/AC First, a contractor for the U.S. government in Afghanistan, as a supply specialist. On December 11th, 2019, Ms. Hetemi was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Ms. Hetemi was diagnosed with PTSD.

**Mirnesa Ibric**

309.    Plaintiff Mirnesa Ibric served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as government property manager. On December 11, 2019, Ms. Ibric was psychologically injured in a suicide

89

bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Ibric was diagnosed with PTSD. Mirnesa Ibric is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Mirsada Tomic**

310.    Plaintiff Mirsada Tomic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a food service worker. On December 11, 2019, Ms. Tomic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Tomic was diagnosed with PTSD. Mirsada Tomic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Mirza Tubic**

311.    Plaintiff Mirza Tubic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a fuel distributor. On December 11th, 2019, Mr. Tubic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Tubic was diagnosed with PTSD.

**Morris Anthony Gavins**

312.    Plaintiff Morris Anthony Gavins, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for DynCorp International, a contractor for the U.S. government in Afghanistan, as a warehouse specialist. On December 11th, 2019, Mr. Gavins was psychologically injured in a suicide bombing and subsequent attack committed by

the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing.  As a result of severe emotional distress, Mr. Gavins was diagnosed with PTSD.

**Moses Welham Bolo**

313.    Plaintiff Moses Welham Bolo, a citizen of Kenya, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Health and Environmental Coordinator. On December 11th, 2019, Mr. Bolo was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was covered in debris and suffered smoke inhalation during the attack. As a result of severe physical and emotional distress, Mr. Bolo was diagnosed with PTSD.

**Muharem Latifovic**

314.    Plaintiff Muharem Latifovic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as an air operations coordinator. On December 11, 2019, Mr. Latifovic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Latifovic was diagnosed with PTSD. Muharem Latifovic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Muris Maglic**

315.    Plaintiff Muris Maglic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan. On December 11, 2019, Mr. Maglic was psychologically injured in a suicide bombing and follow on attack

committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Maglic was diagnosed with PTSD. Muris Maglic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Nedim Omazic**

316.    Plaintiff Nedim Omazic served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a senior generator technician. On December 11, 2019, Mr. Omazic was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Omazic was diagnosed with PTSD. Nedim Omazic is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Nedim Pozegic**

317.    Plaintiff Nedim Pozegic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, for the Transportation Department. On December 11th, 2019, Mr. Pozegic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Pozegic was diagnosed with PTSD. The attack constituted an extrajudicial killing.

**Nedzad Smajic**

318.    Plaintiff Nedzad Smajic served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a material control specialist. On May 19, 2010 and December 11, 2019, Mr. Smajic was psychologically injured in terrorist attacks and a suicide bombing committed by the Taliban at Bagram Air Base in Parwan

Province, Afghanistan. As a result of severe emotional distress, Mr. Smajic was diagnosed with PTSD. Nedzad Smajic is a citizen of Bosnia and Herzegovina. These attacks constituted extrajudicial killings.

**Nicolas Candelario**

319.    Plaintiff Nicolas Candelario served in Afghanistan as a civilian contractor working for IAP, a contractor for the U.S. government in Afghanistan as a fuel technician. On December 11, 2019, Mr. Candelario was physically injured in a suicide bombing and follow attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, as well. Mr. Candelario was diagnosed with PTSD. Nicolas Candelario is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Nicole Steele**

320.    Plaintiff Nicole Steele served in Afghanistan as a civilian contractor working for CACI, a contractor for the U.S. government in Afghanistan as ISR collection manager. On December 11, 2019, Ms. Steele was psychologically injured in a suicide bombing and follow attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Steele was diagnosed with PTSD. Nicole Steele is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Nina Scott**

321.    Plaintiff Nina Scott served in Afghanistan as a civilian contractor working for Fluor corporation, a contractor for the U.S. government in Afghanistan as a technician. On June 1, 2012, and December 11, 2019, Mrs. Scott was physically injured in a suicide bombing and follow on attack committed by the Taliban at Forward Operating Base Salerno in Khost Province, Afghanistan and Bagram Air Base in Parwan Province, Afghanistan. As a result of the

attacks Mrs. Scott suffered severe emotional distress leading to a diagnosis of PTSD. Nina Scott

is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Nina Zunic**

322.    Plaintiff Nina Zunic served in Afghanistan as a civilian contractor working for the

Fluor Corporation, a contractor for the U.S. government in Afghanistan. On December 11, 2019,

Ms. Zunic was psychologically injured in a suicide bombing and follow on attack committed by

the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe

emotional distress, Ms. Zunic was diagnosed with PTSD. Nina Zunic is a citizen of Bosnia and

Herzegovina. The attack constituted an extrajudicial killing.

**Norris R Moody Jr.**

323.    Plaintiff Norris R Moody Jr. served in Afghanistan as a civilian contractor

working for the Amentum corporation, a contractor for the U.S. government in Afghanistan as a

supply technician. On November 12, 2016, and December 11, 2019, Mr. Moody was

psychologically injured in suicide bombings and follow on attacks committed by the Taliban at

Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr.

Moody was diagnosed with PTSD. Norris R Moody Jr. is a citizen of the United States of

America. These attacks constituted extrajudicial killings.

**Osman Civic**

324.    Plaintiff Osman Civic served in Afghanistan as a civilian contractor working for

the Fluor Corporation, a contractor for the U.S. government in Afghanistan as truck driver. On

March 15, 2010, May 19, 2010, and November 12, 2016, Mr. Civic was psychologically injured

in terrorist attacks and a suicide bombing committed by the Taliban at Bagram Air Base in

Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Civic was diagnosed

with PTSD. Osman Civic is a citizen of the Republic of Kosovo. These attacks constituted extrajudicial killings.

**Osman Dedic**

325.    Plaintiff Osman Dedic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a food service worker. On November 12th, 2016, Mr. Dedic was physically and psychologically injured in a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. He was thrown to the ground, disorientated, his hearing was impaired and he was battered by falling debris. Mr. Dedic was also psychologically injured in an attack committed by the Taliban at Bagram Air Base on December 8th, 2014. The kitchen where he was working was attacked and two of his colleagues were critically injured.  These attacks constituted extrajudicial killings. As a result of physical battery and severe emotional distress, Mr. Dedic was diagnosed with PTSD.

**Patrick Simon**

326.    Plaintiff Patrick Simon served in Afghanistan as a civilian contractor working for Raytheon, a contractor for the U.S. government in Afghanistan as a senior training and development specialist. On November 12, 2016, and December 11, 2019, Mr. Simon was psychologically injured in terrorist attacks and a suicide bombing by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attacks, Mr. Simon suffered severe emotional distress. Patrick Simon is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Pierre Lionel Charles**

327.    Plaintiff Pierre Lionel Charles, a citizen of the United States of America, served in Afghanistan in the military and later as a civilian contractor working for L-3 Vertex

Corporation, a contractor for the U.S. government in Afghanistan, as a defense contractor. On November 12ᵗʰ, 2016, Mr. Charles was psychologically injured in an attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. While enlisted, Mr. Charles was also psychologically injured in an attack committed by the Taliban at Bagram Air Base on February 27th, 2007. The attacks constituted extrajudicial killings. As a result of severe emotional distress, Mr. Charles was diagnosed with PTSD.

**Predrag Sibinovikj**

328.    Plaintiff Predrag Sibinovikj, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as an Operations Coordinator. On December 11th, 2019, Mr. Sibinovikj was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was thrown to the floor and battered in the attack and ran through active crossfire to a bunker. As a result of physical battery and severe emotional distress, Mr. Sibinovikj was diagnosed with PTSD.

**Robert Davis**

329.    Plaintiff Robert Davis served in Afghanistan as a civilian contractor working for the DynCorp International, a contractor for the U.S. government in Afghanistan as an aviation supervisor. On December 11, 2019, Mr. Davis was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Davis was diagnosed with PTSD. Robert Davis is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Rockie Smith, II**

330.    Plaintiff Rockie Smith, II, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan. On December 11th, 2019, and November 12th, 2016, Mr. Smith was physically and psychologically injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attacks constituted extrajudicial killings. During the December 11th, 2019 attack, the ceiling above where he was sleeping collapsed on him. He suffered dust inhalation and was later diagnosed with asthma. As a result of physical injury and severe emotional distress, Mr. Smith was diagnosed with PTSD.

**Roger Cassidy Jr.**

331.    Plaintiff Roger Cassidy Jr. served in Afghanistan as a civilian contractor working for Northrop Grumman Technical Services, a contractor for the U.S. government in Afghanistan logistics manager. On November 12, 2016, and December 11, 2019, Mr. Cassidy Jr. was psychologically injured in suicide bombings committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Mr. Cassidy Jr. was physically injured and suffered emotional distress, which resulted in PTSD due to a Taliban attack. Roger Cassidy Jr. is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Salih Begu**

332.    Plaintiff Salih Begu served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a service desk specialist. On December 11, 2019, Mr. Begu was physically injured and suffered emotional distress, that resulted in PTSD due to a Taliban suicide attack at Bagram Air Base committed by the Taliban in Parwan Province, Afghanistan. Salih Begu is a citizen of the Republic of Kosovo. The attack constituted an extrajudicial killing.

**Samil Hodzic**

333.    Plaintiff Samil Hodzic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for Fluor Corporation, a contractor for the U.S. government in Afghanistan. On December 11th, 2019, Mr. Hodzic was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was blown backward and collided with a parked vehicle and suffered temporary loss of consciousness and disorientation. As a result of physical injury and severe emotional distress, Mr. Hodzic was diagnosed with PTSD.

**Sammy Cabeza-Reyes**

334.    Plaintiff Sammy Cabeza-Reyes served in Afghanistan as a civilian contractor working for Rathyon, a contractor for the U.S. government in Afghanistan as field service representative. On December 11, 2019, Mr. Cabeza-Reyes was psychologically injured in a suicide bombing and follow attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Cabeza-Reyes was diagnosed with PTSD. Sammy Cabeza-Reyes is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Sandeep Singh**

335.    Plaintiff Sandeep Singh served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a translator. On December 11, 2019, Mr. Singh was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack Mr. Singh suffered severe emotional distress. Sandeep Singh is a citizen of the United States. The attack constituted an extrajudicial killing.

**Sanela Ajnadzic**

336.    Plaintiff Sanela Ajnadzic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a food service worker. On December 11th, 2019, Ms. Ajnadzic was physically and psychologically injured in a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. She was thrown to the ground by the impact of the blast, and experienced dizziness, temporary hearing loss and nausea. She was paralyzed in fear and was unable to move for several minutes. As a result of physical battery and severe emotional distress, Ms. Ajnadzic was diagnosed with PTSD.

**Sanja Adjikj**

337.    Plaintiff Sanja Adjikj served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a food service worker. On November 12, 2016, and December 11, 2019. Ms. Adjikj was psychologically injured in suicide bombings and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Adjikj was diagnosed with PTSD. Sanja Adjikj is a citizen of the Republic of North Macedonia. These attacks constituted extrajudicial killings.

**Satnam Singh**

338.    Plaintiff Satnam Singh served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a public works coordinator. On November 12, 2016, and December 11, 2019, Mr. Singh was psychologically injured in suicide bombings and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Singh was

99

diagnosed with PTSD. Satnam Singh is a citizen of India. These attacks constituted extrajudicial killings..

**Sefik Golos**

339.    Plaintiff Sefik Golos served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an air operations specialist. On December 11, 2019, Mr. Golos was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Golos was diagnosed with PTSD. Sefik Golos is a citizen of Bosnia and Herzegovina. The attack constituted an extrajudicial killing.

**Selim Rexhepi**

340.    Plaintiff Selim Rexhepi, a citizen of The Republic of Kosovo, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a mechanic. On December 11th, 2019, Mr. Rexhepi was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. He suffered disorientation and temporary hearing loss from the impact of the attack. Mr. Rexhepi was also psychologically injured in a prior attack committed by the Taliban at Bagram Air Base in Parwan Province on May 19th, 2010. Both attacks constituted extrajudicial killings. As a result of physical injury and severe emotional distress, Mr. Rexhepi was diagnosed with PTSD.

**Selma Husovic**

341.    Plaintiff Selma Husovic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as Senior Operations Specialist. On December 11th, 2019, Ms.

Husovic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Ms. Husovic was also psychologically injured in two prior attacks committed by the Taliban at Bagram Air Base on November 12th, 2016, and May 19th, 2010. These attacks constituted extrajudicial killings. As a result of severe emotional distress, Ms. Husovic was diagnosed with PTSD.

**Senad Bekic**

342.    Plaintiff Senad Bekic, a citizen of Bosnia and Herzegovina, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Food Service Technician. On December 11th, 2019, Mr. Bekic was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Mr. Bekic was also the victim of two prior attacks committed by the Taliban at Bagram Air Base in Parwan Province, on November 12th, 2016, and May 19th, 2010. He was thrown to the floor during the November 12th, 2016, attack and physically injured. These attacks constituted extrajudicial killings.  As a result of severe emotional distress, Mr. Bekic was diagnosed with PTSD.

**Seymour G. Reid**

343.    Plaintiff Seymour G. Reid served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a senior appliance repair technician. On March 15, 2010 and on November 12, 2016, Mr. Reid was psychologically injured in terrorist attacks and a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Reid was diagnosed with PTSD. Seymour G. Reid is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Shalva Maziashvili**

344.    Plaintiff Shalva Maziashvili served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a truck driver. On November 12, 2016 and December 11, 2019, Mr. Maziashvili was psychologically injured in suicide bombings and follow on attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Maziashvili was diagnosed with PTSD. Shalva Maziashvili is a citizen of Georgia. These attacks constituted extrajudicial killings.

**Shkljkjim Sulejmani**

345.    Plaintiff Shkljkjim Sulejmani, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a transportation foreman. On November 12, 2016, Mr. Sulejmani was injured in a suicide bombing committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. Mr. Sulejmani was also injured in an attack committed by the Taliban at Forward Operating Base Ghazni in Ghazni Province, Afghanistan on August 28, 2013. These attacks constituted extrajudicial killings. As a result of severe emotional distress, Mr. Sulejmani was diagnosed with PTSD.

**Simon Njau Thini**

346.    Plaintiff Simon Njau Thini, a citizen of Kenya, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Plumber Journeyman. On December 11th, 2019, Mr. Thini was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Thini was diagnosed with PTSD.

**Stefan Jankovski**

347.    Plaintiff Stefan Jankovski, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a Senior Cost Analyst. On December 11th, 2019, Mr. Jankovski was physically and psychologically injured in an attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. He was thrown to the floor and items fell off the walls and shelves. His container door was hit and he was unable to exit and was rescued by firefighters. Mr. Jankovski was also psychologically injured in an attack committed by the Taliban at Bagram Air Base on November 12, 2016. These attacks constituted extrajudicial killings. As a result of physical battery and severe emotional distress, Mr. Jankovski was diagnosed with PTSD.

**Steven Allen Peppernick**

348.    Plaintiff Steven Allen Peppernick, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a Cryogenic Maintenance Technician. On December 11th, 2019, Mr. Peppernick was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was thrown backwards into cabinets and battered by the impact of the blast. As a result of physical battery and severe emotional distress, Mr. Peppernick was diagnosed with PTSD.

**Steven Andrew Przybylowicz**

349.    Steven Andrew Przybylowicz, a citizen of the United States of America, served in Afghanistan as the Government Lead for Force Protection Systems, Afghanistan. On November 12th, 2016, and December 11th, 2019, Mr. Przybylowicz was physically and psychologically

103

injured in attacks committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. During the November 12th, 2016 attack he was thrown to the ground by the force of the blast and witnessed victims' bodies lifted and limbs were thrown in his direction. He experienced vomiting and incontinence. The attacks constituted extrajudicial killings. As a result of physical battery and severe emotional distress, Mr. Przybylowicz was diagnosed with PTSD.

**Suzette Mclean**

350.    Plaintiff Suzette Mclean served in Afghanistan as a civilian contractor working for CACI, a contractor for the U.S. government in Afghanistan as a force protection supervisor. On December 11, 2019, Ms. Mclean was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Mclean was diagnosed with PTSD. Suzette Mclean is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Taifa Sam Lwangu**

351.    Plaintiff Taifa Sam Lwangu served in Afghanistan as a civilian contractor working for the Fluor corporation, a contractor for the U.S. government in Afghanistan as a journeyman. On December 11, 2019, Mr. Lwangu was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Lwangu was diagnosed with PTSD. Taifa Sam Lwangu is a citizen of Kenya. The attack constituted an extrajudicial killing.

**Timothy Bernard Jennings**

352.    Plaintiff Timothy Bernard Jennings, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for the Science Application International Corporation, a contractor for the U.S. government in Afghanistan. On November 12th, 2016, Mr. Jennings was physically and psychologically injured in a suicide bombing committed by the

Taliban at Bagram Air Base in Parwan Province, Afghanistan. The force of the blast left him disorientated with tinnitus. On December 8th, 2015, Mr. Jennings was also psychologically injured in an attack committed by the Taliban at Kandahar Airport in Kandahar Province, Afghanistan. These attacks constituted extrajudicial killings. As a result of physical injury and severe emotional distress, Mr. Jennings was diagnosed with PTSD.

**Tonia Barton**

353.    Plaintiff Tonia Barton served in Afghanistan as a civilian contractor working for CSRA LLC, a contractor for the U.S. government in Afghanistan as a logistics associate. On December 11, 2019, Ms. Barton was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Ms. Barton was diagnosed with PTSD. Tonia Barton is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**Torian Denard Moody**

354.    Plaintiff Torian Denard Moody served in Afghanistan as a civilian contractor working for Science and Engineering Services LLC, a contractor for the U.S. government in Afghanistan as a parts clerk. On January 19, 2012, November 12, 2016, and December 11, 2019, Mr. Moody was psychologically injured in terrorist attacks and suicide bombings committed by the Taliban at Kandahar Airport and at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Moody was diagnosed with PTSD. Torian Denard Moody is a citizen of the United States of America. These attacks constituted extrajudicial killings.

**Troy Quinton Cyprian**

355.    Plaintiff Troy Quinton Cyprian, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the

U.S. government in Afghanistan as a safety specialist. On December 11th, 2019, Mr. Cyprian was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. He was thrown to the ground and disorientated. As a result of physical battery and severe emotional distress, Mr. Cyprian was diagnosed with PTSD.

**Tyson Treb'or Yancey**

356.    Plaintiff Tyson Treb'or Yancey, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for IAP Worldwide Services, a contractor for the U.S. government in Afghanistan, as a Fuels Technician. On December 11th, 2019, Mr. Yancey was psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. As a result of severe emotional distress, Mr. Yancey was diagnosed with PTSD.

**Valbon Muhaxheri**

357.    Plaintiff Valbon Muhaxheri served in Afghanistan as a civilian contractor working for the AC First/Amentum corporation, a contractor for the U.S. government in Afghanistan as a supply specialist. On December 11, 2019, Mr. Muhaxheri was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Muhaxheri was diagnosed with PTSD. Valbon Muhaxheri is a citizen of Kosovo. The attack constituted an extrajudicial killing.

**Van Patrick Torain**

358.    Plaintiff Van Patrick Torain, a citizen of the United States of America, served in Afghanistan as a civilian contractor working for SOSI International, a contractor for the U.S.

government in Afghanistan, as a logistics manager. On November 12th, 2016, Mr. Torian was psychologically injured in an attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. This attack constituted an extrajudicial killing. As a result of extreme emotional distress, Mr. Torain was diagnosed with PTSD.

**Vesna Georgievska**

359.    Plaintiff Vesna Georgievska, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan, as a laborer and bus driver. On December 11th, 2019, Ms. Georgievska was physically and psychologically injured in a suicide bombing and subsequent attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. The attack constituted an extrajudicial killing. She was knocked down and disoriented during the attack. Rocks and debris battered her and she suffered smoke inhalation. As a result of physical battery and severe emotional distress, Ms. Georgievska was diagnosed with PTSD.

**Wesley Ngeno**

360.    Plaintiff Wesley Ngeno served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as a laborer. On December 11, 2019, Mr. Ngeno was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Ngeno was diagnosed with PTSD. Wesley Ngeno is a citizen of Kenya. The attack constituted an extrajudicial killing.

**William Coleman**

361.    Plaintiff William Coleman served in Afghanistan as a civilian contractor working for Science Applications International Corporation, a contractor for the U.S. government in Afghanistan as a field engineer. On December 11, 2019, Mr. Coleman was psychologically

injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Coleman was diagnosed with PTSD. William Coleman is a citizen of the United States of America. The attack constituted an extrajudicial killing.

**William G. Daniel**

362.    Plaintiff William G. Daniel served in Afghanistan as a civilian contractor working for Fluor, a contractor for the U.S. government in Afghanistan as a logistician journeyman. On December 11, 2019, Mr. Daniel was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of severe emotional distress, Mr. Daniel was diagnosed with PTSD. William Daniel is a citizen of the United States of America. The attack constituted an extrajudicial killing

**Vinod Kumar**

363.    Plaintiff Vinod Kumar served in Afghanistan as a civilian contractor working for the Fluor Corporation, a contractor for the U.S. government in Afghanistan as an HVAC repairman. On December 11, 2019, Mr. Kumar was psychologically injured in a suicide bombing and follow on attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. As a result of the attack Mr. Kumar suffered severe emotional distress. Vinod Kumar is a citizen of India. The attack constituted an extrajudicial killing.

**Zharko Gjorgjijevski**

364.    Plaintiff Zharko Gjorgjijevski, a citizen of the Republic of North Macedonia, served in Afghanistan as a civilian contractor working for Fluor Federal Global Projects, Inc., a contractor for the U.S. government in Afghanistan as a heavy truck driver. On December 11th, 2019, Mr. Gjorgjijevski was physically and psychologically injured in an attack committed by the Taliban at Bagram Air Base in Parwan Province, Afghanistan. He was thrown from his chair

by the impact of the blast and suffers long term loss of hearing and tinnitus. While employed by DynCorp international, Mr. Gjorgjijevski was also psychologically injured in a prior attack committed by the Taliban on September 14th, 2012, at Camp Bastion & Leatherneck in Helmand Province, Afghanistan. These attacks constituted extrajudicial killings. As a result of his physical injuries and severe emotional distress, Mr. Gjorgjijevski was diagnosed with PTSD.

## CLAIMS FOR RELIEF

### COUNT ONE: DAMAGES UNDER 28 U.S.C. § 1605A

**ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN WHO WAS KILLED OR INJURED IN AN ACT OF INTERNATIONAL TERRORISM FOR DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN PAIN AND SUFFERING UNDER 28 U.S.C. § 1605A(c)**

365.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

366.    Defendant Iran is a foreign state that since 1984 has continuously been designated as a State Sponsor of Terrorism within the meaning of 28 U.S.C. § 1605A. Iran was so designated at the time of the Terrorist Attacks which injured Plaintiffs or their family members and remains so today.

367.    Plaintiffs or their family members were injured by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts, and such acts or provision of material support or resources were committed by officials, employees, or agents of Iran while acting within the scope of their office, employment, or agency.

368.    The terrorist attacks that injured or killed Plaintiffs or their family members occurred in Afghanistan.

369.    At the time of the attacks in which they or their family members were injured, Plaintiffs or their attacked family members were U.S. nationals, members of the U.S. armed forces, and/or employees or contractors of the U.S. government acting within the scope of their employment.

370.    As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendant and their agents, Plaintiffs identified in the foregoing paragraphs were injured and endured severe physical injuries, extreme mental anguish and emotional distress, pain and suffering, loss of solatium, and economic losses including medical expenses and lost income.

371.    The Defendant's provision of material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict, and would reasonably result in, severe emotional distress on the Plaintiffs.

372.    Plaintiffs are currently nationals of the United States, members of the U.S. armed forces, employees or contractors of the United States government acting within the scope of their employment, or the legal representatives of one of the foregoing.

373.    Plaintiffs' compensatory damages include, but are not limited to, their severe physical injuries, extreme mental anguish and emotional distress, pain and suffering, and any economic losses determined by the trier of fact.

374.    The Defendant is liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish and emotional distress, pain and suffering and any pecuniary loss.

375.    The conduct of the Defendant and their agents was criminal, outrageous, extreme, wanton, willful, malicious, a threat to international peace and security, and a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court:

a.  Enter judgment for all Plaintiffs and Plaintiff Estates against Iran finding it liable under 28 U.S.C. § 1605A;

b.  Award Plaintiffs compensatory and punitive damages in to the maximum extent permitted by law, 28 U.S.C. § 1605A, including but not limited to physical injury, extreme mental anguish and emotional distress, pain and suffering, economic damages, solatium damages, and punitive damages;

c.  Award Plaintiffs prejudgment interest;

d.  Award Plaintiffs costs, expenses, and attorneys' fees; and

e.  Award Plaintiffs any such further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted this 8th day of December 2025.

/s/ Thomas F. DellaFera, Jr.
Thomas F. DellaFera, Jr. USDC No. 1032671
Peter A. Miller (*pro hac vice* to be filed)
**Miller DellaFera PLC**
3420 Pump Road | PMB 404
Henrico, VA 23233
Telephone: 800-401-6670
Facsimile: 804-773-3460

**ATTORNEYS FOR THE PLAINTIFFS**